[No. D040110. Fourth Dist., Div. One. July 7, 2003.]

PETER REALMUTO, Plaintiff and Appellant, v.
ROBERT GAGNARD et al., Defendants and Respondents.

**Counsel**

Scannell & Associates and Jonathan Preston for Plaintiff and Appellant.

Lounsbery, Ferguson, Altona & Peak, Erick R. Altona and Judith Hartwig for Defendants and Respondents.

**Opinion**

**AARON, J.**—Appellant Peter Realmuto appeals from an order granting summary judgment in favor of respondents Robert Gagnard and Rodney Savoy. Realmuto has sued Gagnard and Savoy (the buyers) for specific performance and for breach of a contract to purchase Realmuto's residence. The trial court granted summary judgment in favor of the buyers on the ground that Realmuto failed to provide them with a real estate transfer disclosure statement, as required by Civil Code section 1102 et seq.[1] On appeal, Realmuto contends: (1) provision of a disclosure statement was not a condition precedent to the buyers' performance; (2) the exclusive remedy for failure to provide a disclosure statement is a suit for actual damages under section 1102.13; (3) the buyers waived their right to a disclosure statement; and (4) failure to provide a disclosure statement was not a material breach of the contract. We reject these arguments and affirm the judgment.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 1999, respondents Robert Gagnard and Rodney Savoy entered into a written agreement to purchase appellant Peter Realmuto's home located at 1311 Sunny Acres in Alpine, California. The buyers were investors who planned to assign the property to the Cuyapaipe Band of Mission Indians (also known as the Ewiiaapaayp Band of Kumeyaay Indians) (the tribe) for

---

[1] Unless otherwise noted, all statutory references are to the Civil Code.

possible development of a casino on land adjacent to the tribe's reservation. Realmuto was aware that the buyers were purchasing the property for investment purposes, and not as a personal residence. The agreed purchase price was $683,000.[2]

The terms of the parties' agreement were set forth in a standard form residential purchase agreement and three counteroffers (collectively the Agreement). The Agreement provided that escrow was to close in 120 days.

Paragraph 6 of the Agreement required the seller to provide to the buyers certain written disclosures, including a real estate transfer disclosure statement (TDS or disclosure statement). (§ 1102 et seq. ) Paragraph 6A stated that the required disclosure statement "shall be completed and delivered to Buyer, who shall return signed copies to Seller." Paragraph 6D further provided: "If the TDS … is delivered to Buyer after the offer is signed, Buyer shall have the right to cancel this Agreement within 3 days after delivery in person, or 5 days after delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent." Paragraph 16A stated that the seller had five days from the date of acceptance of the Agreement to "order, request or complete" the required written disclosures and two days "after receipt (or completion)" to provide them to the buyers.

The Agreement provided that the buyer would pay a nonrefundable deposit of $10,000 toward the total purchase price. Paragraph 20 of the standard form purchase agreement set forth a liquidated damages provision that included blank lines for both the seller and buyer to initial. This provision stated: "If Buyer fails to complete this purchase by reason of any default of Buyer, Seller shall retain, as liquidated damages for breach of contract, the deposit actually paid." The buyers initialed this paragraph, but Realmuto never did. Each of the subsequent counteroffers included the following provision: "Paragraphs in the purchase contract (offer) which require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer." None of the counteroffers included a liquidated damages clause.

The final counteroffer stated that the property would be sold "as is" and that the seller would remove any storage sheds that were on the property. The

---

[2] In a cross-complaint against their real estate broker, the buyers alleged that the fair market value of the Realmuto property was less than $300,000. In his separate cross-complaint, the broker alleged that the buyers and the tribe were willing to "purchase any and all properties adjacent to the TRIBE's reservation, without regard to whether the purchase price reflected the market values of the properties." Realmuto alleged in his complaint that the property "had a reasonable value of $683,000" and that "the purchase price was fair, just, and reasonable."

parties executed the final agreement on December 13, 1999. In accordance with the terms of the agreement, the buyers paid a $10,000 deposit, half of which was released to Realmuto upon the opening of escrow and the other half 25 days later. In April 2000, the buyers paid Realmuto an additional $6,500 to extend the date for close of escrow to May 18, 2000.

On or about May 5, 2000, the buyers and the tribe entered into a written assignment and assumption agreement. Under the assumption agreement, the tribe agreed to assume the buyers' rights, title, and interest in four specified properties. The four properties did not include the Realmuto property.

Realmuto never provided the required TDS to the buyers. According to Realmuto, the buyers did not ask him to provide a disclosure statement during the escrow period.

The buyers never completed their purchase of the Realmuto property. On January 4, 2001, Realmuto sued the buyers for specific performance and for breach of contract. The buyers filed a cross-complaint against the tribe, which they subsequently dismissed. The buyers also filed a cross-complaint against Realmuto and their own broker. The buyers' broker in turn filed a cross-complaint and third party complaint against the buyers, the tribe, Realmuto's broker, two gaming organizations, and joint ventures between the gaming organizations and the tribe.

The trial court granted summary judgment for the buyers in Realmuto's action against them for specific performance and breach of contract. The court found that providing the buyers with a TDS was a condition precedent to the buyers' duty to perform. Because it was undisputed that Realmuto never delivered a TDS to the buyers, the trial court concluded that there were no triable issues of fact and that the buyers were entitled to judgment as a matter of law.

## II.

## DISCUSSION

### A. *Standard of Review*

Under Code of Civil Procedure section 437c, subdivision (c), summary judgment is proper where the papers submitted establish that no triable issues of material fact exist and that the moving party is entitled to judgment as a matter of law. "On appeal, the reviewing court exercises its independent judgment, deciding whether the moving party established undisputed facts that negate the opposing party's claim or state a complete defense." (*Romano*

*v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486–487 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; see also *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].)

B.  *Delivery of the Disclosure Statement Was a Condition Precedent to the Buyers' Performance*

Realmuto contends the trial court erred in finding that the delivery of a disclosure statement, as required by section 1102 et seq., was a condition precedent to the buyers' performance of the contract. Realmuto maintains "[t]here is no language in the contract which states that close of escrow shall occur, only after seller has provided an appropriate disclosure to the buyer." Realmuto also asserts that "the language in the contract calling for time frames to disclose should be viewed as a directive" rather than as a condition precedent. We disagree.

In contract law, "a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313 [24 Cal.Rptr.2d 597, 862 P.2d 158].) The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. (13 Williston on Contracts (4th ed. 2000) § 38:16, at p. 441.)

In this case, however, we are dealing with a statutory requirement that was expressly incorporated into the parties' agreement—the requirement that the seller provide to the buyers a real estate transfer disclosure statement. (§ 1102 et seq.) Thus, our primary task is to determine whether the Legislature intended the delivery of a disclosure statement to be a condition precedent to the buyer's performance. In deciding this issue, we are guided by settled principles of statutory interpretation. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420] (*Pieters*).) "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

Our analysis must begin with the language of the statute. (*Pieters, supra,* 52 Cal.3d at p. 898.) In 1985, the Legislature enacted Senate Bill No. 1406, which requires sellers to deliver a real estate transfer disclosure statement to buyers in covered transfers of residential property. (Stats. 1985, ch. 1574, § 2, p. 5788, operative Jan. 1, 1987.) With specified exceptions not applicable

here (§ 1102.2 ), ■ the law requires the seller of any real property "improved with or consisting of" one to four dwelling units to provide a written disclosure statement to the buyer. (§ 1102.)

The form of the required disclosure statement is set forth in detail in section 1102.6. The disclosure form prescribed by section 1102.6 states, "prospective Buyers may rely on this information in deciding whether and on what terms to purchase the subject property." (§ 1102.6.) The required disclosures include information about the buildings and any significant defects, as well as information about the land itself, including disclosure of hazardous materials, encroachments, easements, fill, settling, flooding, drainage problems, neighborhood noise, major damage from natural disasters, and lawsuits by or against the seller affecting the property. (§ 1102.6.)

Section 1102.3, subdivision (a) requires the seller to provide the required disclosure statement "as soon as practicable before transfer of title." The seller must also "indicate compliance with this article either on the receipt for deposit, the real property sales contract ... or on a separate document." (§ 1102.3, subd. (b).) Section 1102.3, subdivision (b) further provides: "If any disclosure, or any material amendment of any disclosure, required to be made by this article, is delivered after the execution of an offer to purchase, the transferee shall have three days after delivery in person or five days after delivery by deposit in the mail, to terminate his or her offer by delivery of a written notice of termination to the transferor or the transferor's agent."

The stated purposes of Senate Bill No. 1406 were as follows: (1) the buyer would be assured of receiving information on the condition of the property which could affect his decision to purchase, the price which may be offered, or the contingencies of the sale which may be requested; (2) the disclosure checklist would focus attention on particular situations and property; (3) disclosure would be uniform throughout the state; (4) the obligations imposed on sellers and agents by the courts would be clarified; and (5) the bill would reduce litigation by eliminating disputes over what may or may not have been represented. (Assem. Com. on Finance and Insurance, Analysis of Senate Bill No. 1406 (1985–1986 Reg. Sess.) as amended July 10, 1985, p. 2.)[3]

As originally proposed, Senate Bill No. 1406 contained a provision (proposed § 1102.3) that would have permitted the buyer to waive his right to receive a disclosure statement by signing a written waiver. (Sen. Bill No.

---

[3] On our own motion, we take judicial notice of the legislative history of Senate Bill No. 1406 and the 1994 amendments to the statute enacted as Senate Bill No. 1377. (Evid. Code, §§ 452, subd. (c), 459; *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [276 Cal.Rptr. 524] [appellate court may take judicial notice of legislative history materials on own motion].)

1406 (1985–1986 Reg. Sess.) as introduced March 8, 1985, § 2.) However, the Department of Real Estate proposed an amendment to delete the waiver provision, arguing that it "defeats the bill's objective and acts as a shield against disclosing matters required in the absence of this bill." (Cal. Dept. of Real Estate, Analysis of Sen. Bill No. 1406 (1985–1986 Reg. Sess.) April 29, 1985, p. 4.) As a result, the waiver provision was deleted from the final version of the bill. (Sen. Bill No. 1406 (1985–1986 Reg. Sess.) as amended May 6, 1985, § 2.)

In 1994, the Legislature amended section 1102 to add the provision that: "Any waiver of the requirements of this article is void against public policy." (§ 1102, subd. (c).) The Legislature's stated purpose in enacting this change was to clarify "that the delivery of a real estate transfer disclosure statement may not be waived in an 'as is' sale, as held in *Loughrin v. Superior Court* (1993) 15 Cal.App.4th 1188 [19 Cal.Rptr.2d 161]." (§ 1102.1, subd. (a).)

The 1994 amendments also added the following paragraph to the disclosure statement mandated by section 1102.6: "SECTION 1102.3 OF THE CIVIL CODE PROVIDES A BUYER WITH THE RIGHT TO RESCIND A PURCHASE CONTRACT FOR AT LEAST THREE DAYS AFTER THE DELIVERY OF THIS DISCLOSURE IF DELIVERY OCCURS AFTER THE SIGNING OF AN OFFER TO PURCHASE. IF YOU WISH TO RESCIND THE CONTRACT, YOU MUST ACT WITHIN THE PRESCRIBED PERIOD."

■ "Although [section 1102.3] refers to the right to terminate an offer, this provision is generally understood to refer to a right to rescind the purchase contract if the buyer's offer has been accepted before the delivery of the TDS." (1 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 1:145, p. 527, fns. omitted.) This interpretation of the statute is also consistent with the language of the statutory disclosure form, which refers to the buyer's "right to rescind a purchase contract" after delivery of the form. (§ 1102.6.)

■ Our review of this statutory scheme convinces us that the Legislature intended the seller's delivery of a disclosure statement to be a nonwaivable condition precedent to the buyer's performance. By mandating delivery of the disclosure statement "before transfer of title" (§ 1102.3, subd. (a)), giving the buyer an unqualified right of rescission when the disclosure statement is delivered after the execution of an offer to purchase (§ 1102.3), and making the disclosure requirement nonwaivable even in an "as is" sale (§§ 1102, subd. (c), 1102.1, subd. (a)), the Legislature plainly contemplated that buyers would never be irrevocably committed to performing the contract without having received the required disclosures. This legislative purpose would be defeated if a seller could enforce a contract without having complied with the disclosure requirements.

Such a result would also deprive buyers of their statutory right of rescission. If Realmuto had delivered the required disclosure statement in a timely manner, the buyers would have had the right to rescind the contract within three to five days of delivery of the statement. (§ 1102.3.) ▮ Because Realmuto did not deliver a TDS, the statutory period for rescission was never triggered. In these circumstances, allowing Realmuto to enforce the contract would eliminate the buyers' statutory right of rescission. We must avoid a construction of the statute that would negate a right of rescission the Legislature has deliberately written into the law.

Further, the disclosure form prescribed by the Legislature expressly states that "prospective Buyers may rely on this information in deciding whether and on what terms to purchase the subject property." (§ 1102.6.) ▮ Thus, the Legislature has determined that buyers must be given the required disclosures in order to permit them to assess whether or not to go through with the transaction, and if so, on what terms. The statute makes it clear that this is not an optional directive; it is a mandatory, nonwaivable condition of every covered real estate transaction. We therefore conclude that the seller's delivery of the disclosure statement is a condition precedent to the buyer's duty to perform the contract.

C.  *The Damages Remedy of Section 1102.13 Applies Only If There Has Been a Completed Transfer of Property*

Relying upon section 1102.13, Realmuto contends that the contract may not be invalidated solely as a result of his failure to deliver a disclosure statement. Section 1102.13 provides: "No transfer subject to this article shall be invalidated solely because of the failure of any person to comply with any provision of this article. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this article shall be liable in the amount of actual damages suffered by a transferee."

Section 1102.13 by its terms applies only to a "transfer" of property. A "transfer" is "an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." (§ 1039.) ▮ Thus, if a transfer of real property has already occurred—a conveyance of title from seller to buyer—section 1102.13 provides that the transfer shall not thereafter be invalidated solely because of the seller's failure to comply with the disclosure requirements of section 1102 et seq. In other words, section 1102.13 is applicable only to a situation where the buyer has gone through with the transaction despite the seller's failure to comply with the statutory disclosure requirements. If no transfer has taken place, section 1102.13 does not apply. In this case, there was no transfer, and section 1102.13 is therefore inapplicable.

Our interpretation of section 1102.13 is also consistent with the purposes of the statute. ■ As previously discussed, the Legislature contemplated that no buyer would ever be compelled to go through with a covered sales contract without having received the required disclosure statement. This goal would be defeated if a noncomplying seller were permitted to enforce the contract against the buyer and leave the buyer with only a suit for damages. Such a result—permitting the seller and buyer to sue each other for specific performance and/or breach of the contract—would also be contrary to the Legislature's stated intent "to reduce litigation and disputes pertaining to certain real property sales transactions." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1406 (1985–1986 Reg. Sess.) as amended May 6, 1985, p. 2.) ■ Based on the plain language of the statute and its legislative history, we therefore conclude that the damages remedy of section 1102.13 applies only if there has been a completed transfer of the property.

### D. The Buyers Did Not—and Could Not—Waive Their Rights to a Disclosure Statement

Realmuto also argues that the buyers waived their right to a disclosure statement by failing to request one during the escrow period, by informing him that they were not purchasing the property as a personal residence, by failing to inspect the property, by paying $6,500 to extend the escrow period, and by failing to conduct a final walk-through of the property. However, as previously discussed, the statute plainly states that any waiver of the disclosure requirements "is void as against public policy." (§ 1102, subd. (c).)

■ We reject Realmuto's argument that this anti-waiver provision only prohibits a seller from contracting with a buyer for an express waiver of the statutory disclosure requirements. Nothing in the language of the statute suggests that it is limited to a particular form of waiver. A court may not read into a statute qualifications or modifications that will materially affect its operation so as to conform to a supposed intention not expressed by the Legislature. (*Yamasaki v. Mercury Casualty Ins. Co.* (1992) 11 Cal.App.4th 830, 833 [14 Cal.Rptr.2d 577]; Code Civ. Proc., § 1858.) Further, the legislative history of the anti-waiver provision confirms that its intended effect was to "require the seller and realtor to furnish a transfer disclosure statement in *any* transfer of residential property, except as specifically exempted." (Sen. Floor Analyses, Bill Analysis of Sen. Bill No. 1377 (1993–1994 Reg. Sess.) Aug. 12, 1994, pp. 1–2, italics added.)

■ Contrary to Realmuto's arguments, the statute does not exempt the transaction from coverage merely because the buyers did not contemplate using the home as a personal residence. The statute contains no exception based on the intended use of the property. The contract at issue here was for

the sale of a single family residence within the scope of covered transactions as defined in section 1102, subdivision (a), and it is not one of the specifically exempted transactions listed in section 1102.2.[4] Further, the required disclosures are not limited to the condition of the residence; they also include a host of potential defects relating to the condition of the land. (§ 1102.6.) We find that the buyers had no duty to perform when no disclosure statement had been provided to them.

### E.  Realmuto's Failure to Provide the Buyers with a Disclosure Statement Precludes Him From Compelling Specific Performance of the Contract

Finally, Realmuto argues that specific performance may be compelled because his failure to provide a disclosure statement constitutes only a "partial" failure to perform that was "either entirely immaterial, or capable of being fully compensated ...." (§ 3392.)  ▮  As we have discussed, however, the requirement of a disclosure statement is a nonwaivable condition of every covered sale of real estate, the performance of which also gives rise to a right of rescission by the buyer. As a general rule, "[a] plaintiff may not obtain specific performance unless he has performed, or offered to perform, all of the conditions precedent required of him by the terms of the contract." (*Evarts v. Johnston* (1949) 34 Cal.2d 6, 9 [206 P.2d 633]; accord, 11 Witkin, Summary of California Law (9th ed. 1990) Equity § 67, p. 745 ["The plaintiff who seeks specific performance must ordinarily perform all conditions precedent to the defendant's obligation."].)

To allow specific performance of a contract where the seller has failed to comply with the statutory disclosure requirements would thwart the purposes of the law. Not only would such a result deprive buyers of their statutory right of rescission, but it would result in exactly the kind of litigation the Legislature intended to avoid by enacting the disclosure requirements. As we have noted in our discussion of section 1102.13 (see part II.C., *ante*, p. 202) a primary purpose of the statute was "to reduce litigation and disputes pertaining to certain real property sales transactions." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1406 (1985–1986 Reg. Sess.) as amended May 6, 1985, p. 2.) This goal would be frustrated if a noncomplying seller could sue for specific performance by litigating the materiality or nonmateriality of his failure to deliver the required TDS. We therefore conclude that Realmuto's failure to provide a disclosure statement precludes his action against the buyers for specific performance of the contract.

---

[4] Section 1102.2 exempts various transfers of real estate from the disclosure requirements, including transfers covered by specified provisions of the Business and Professions Code, court-ordered transfers, transfers after default, transfers between spouses or co-owners, certain transfers by fiduciaries, and other specified transfers.

## III.

## CONCLUSION

The delivery of a TDS is a nonwaivable condition precedent to the buyer's duty of performance in every sale of real estate covered by section 1102 et seq. The seller's performance of this condition also gives rise to a statutory right of rescission by the buyer. A buyer has no duty to perform the contract unless the seller complies with the statutory disclosure requirements and the buyer chooses not to exercise his right of rescission. Realmuto's failure to deliver a TDS precludes this action against the buyers for specific performance and breach of contract.

## IV.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

McIntyre, Acting P. J., and O'Rourke, J., concurred.