[No. A127660. First Dist., Div. Four. Apr. 29, 2011.]

CHRISTIAN HELLUM et al., Plaintiffs and Appellants, v.
JAMES W. BREYER et al., Defendants and Respondents.

1302

**COUNSEL**

Green Welling, Robert S. Green, Brian S. Umpierre; The Rosen Law Firm and Laurence M. Rosen for Plaintiffs and Appellants.

Morrison & Foerster, Miriam A. Vogel, Paul T. Friedman and Lawrence R. Katzin for Defendants and Respondents.

OPINION

**RUVOLO, P. J.—**

### I.

### INTRODUCTION

In the aftermath of their failed investment in Prosper Marketplace, Inc. (Prosper), an online money lending service, Christian Hellum and David Booth (plaintiffs) filed the instant class action lawsuit against Prosper and its corporate officers based on alleged violations of California and federal securities laws. Three of the named defendants who served as Prosper's outside directors, James W. Breyer, Larry W. Cheng, and Robert C. Kagle (collectively, the outside directors),[1] filed a demurrer arguing that plaintiffs had failed to plead sufficient facts to establish that the outside directors were liable on any of the three causes of action pled against them pursuant to Corporations Code section 25504[2] and title 15 of the Securities Act of 1933, 15 United States Code section 77o (Title 15 of the Securities Act).[3]

In seeking demurrer, the outside directors argued that in order to state a cause of action under each of plaintiffs' theories of liability, plaintiffs were required to plead facts showing that the outside directors asserted control over Prosper, the primary violator, and that plaintiffs had failed to allege sufficient facts establishing such control. Accepting this contention, the trial court sustained the outside directors' demurrer, and entered a judgment of dismissal in their favor. Plaintiffs appeal, contending that the judgment of dismissal entered in favor of the outside directors should be reversed because plaintiffs' complaint stated a claim under every theory of liability pled under both section 25504 and Title 15 of the Securities Act.

We agree with plaintiffs that under one of the many provisions of section 25504 establishing liability for specific classes of individuals, presumptive liability is imposed for directors and officers of any corporation that violates specified state securities statutes, regardless of whether the particular officers and directors actually exercised control over the corporation. Therefore, the trial court erred in imposing a control requirement where none existed, and in

---

[1] The term "outside directors" means that Breyer, Cheng, and Kagle were members of Prosper's board of directors, but were not employees of the company.

[2] All undesignated section references are to the Corporations Code.

[3] We note that the parties have referenced this federal statute as "Section 15 of the Securities Act" throughout their briefs, and that this usage is also found in some of the cited cases in this opinion. We have not adopted that usage, and instead use the preferred citation format of the Reporter of Decisions in the California Style Manual for codified federal statutes.

sustaining the outside directors' demurrer to this cause of action on the ground that plaintiffs had failed to allege sufficient facts demonstrating such control.

As for the remaining two theories of liability pled against the outside directors under Title 15 of the Securities Act and a different provision of section 25504, plaintiffs concede as to those claims they must establish that outside directors were in a position of control. In examining the allegations relating to these separate causes of action, we conclude that plaintiffs' complaint alleged sufficient facts demonstrating that outside directors possessed such control. Accordingly, we reverse.

## II.

## FACTS AND PROCEDURAL HISTORY

Prosper, a closely held corporation based in San Francisco, California, was formed in March 2005. Its sole business was the operation of an online lending program through its Web site, www.Prosper.com. Prosper's lending platform functioned like a double-blind auction, connecting individuals who wished to borrow money with individuals, like plaintiffs, who wished to purchase loans extended to borrowers. Lenders and borrowers were prohibited from dealing directly with one another. They registered on the Web site and created Prosper identities.

Potential borrowers could request unsecured loans in amounts between $1,000 and $25,000 by posting "listings" indicating the amount they wanted to borrow and the maximum interest rate they would be willing to pay. Prosper assigned borrowers a credit score based on a commercial credit score obtained from a credit bureau, but Prosper did not verify personal information, such as employment and income. Potential lenders bid on funding all or portions of loans for specified interest rates, which were typically higher than rates available from depository accounts at financial institutions. Each loan was usually funded with bids by multiple lenders. After an auction closed and a loan was fully bid upon, the borrower received the requested loan with the interest rate fixed by Prosper at the lowest rate acceptable to all winning bidders.

Prosper charged an origination fee from each borrower and a servicing fee from each lender. In return, Prosper administered the loan program by collecting and distributing payments to the lenders, and by initiating procedures to collect past due loans from borrowers, including the assignment of delinquent loan accounts to collection agencies.

As of October 2008, Prosper had initiated approximately $174 million in loans and had over 830,000 members, including both borrowers and lenders. On approximately October 14, 2008, Prosper announced that it would temporarily cease underwriting and selling loan notes on its Web site. On November 24, 2008, the Securities and Exchange Commission (SEC) imposed a cease-and-desist order against Prosper pursuant to "Section 8A of the Securities Act of 1933." The SEC made a number of findings, including that "[t]he loan notes issued by Prosper . . . are securities and Prosper, from approximately January 2006 through October 14, 2008, violated Sections 5(a) and (c) of the Securities Act, which prohibit the offer or sale of securities without an effective registration statement or a valid exemption from registration."

Plaintiffs, who purchased loan notes through Prosper and who suffered losses, brought this lawsuit against Prosper and its corporate officials, including the outside directors, seeking to represent a nationwide class of lenders who participated in Prosper's online lending program. In plaintiffs' second amended complaint (SAC), the operational complaint for our purposes, plaintiffs alleged violations of state and federal securities laws arising out of the purchase and sale of approximately $174 million of nonexempt, unqualified, and unregistered loan note securities between January 1, 2006, and October 14, 2008. Plaintiffs claimed that as of July 2009, approximately $42.6 million worth of loan notes purchased by lenders had become worthless because the borrowers had not repaid the loans to Prosper.

Of the seven causes of action alleged in the SAC, three were leveled against the outside directors. The third and fourth causes of action alleged that the outside directors violated separate provisions of section 25504. Under the pertinent provisions of section 25504, the following persons are jointly and severally liable for selling unqualified securities, with those who have engaged in an unlawful practice: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, . . . unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." "Person" is defined as including individuals and corporations. (§ 25013.)

In the third cause of action, plaintiffs sought to hold the outside directors liable under the first provision in section 25504, spelling out liability for every person who "directly or indirectly controls a person liable under Section

25501 or 25503."[4] The third cause of action alleged that the outside directors were liable under this provision because "[b]y virtue of their executive positions, and/or Board membership . . . these individuals had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the decision to offer and sell loan note securities in California without qualification or an exemption."

In the fourth cause of action, plaintiffs sought to plead a cause of action under section 25504 based solely on the outside directors' status as directors of Prosper. So framed, the fourth cause of action alleged the outside directors were liable because they fell within the classification of "every principal executive officer or director of a corporation so liable."

In the seventh cause of action, plaintiffs sought to hold the outside directors liable under Title 15 of the Securities Act, imposing joint and several liability upon persons for acts committed by those under their control that violate federal registration requirements. Specifically, Title 15 of the Securities Act provides: "Every person, who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title [which deal with false statements or omissions in a registration statement] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." Plaintiffs once again pled that the outside directors "had the power to influence and control" Prosper, "including the decision to offer and sell loan note securities . . . without qualification or an exemption."

The outside directors filed a demurrer to the claims brought against them in the SAC. They argued that plaintiffs had failed to allege "a single fact" showing the outside directors "are liable as control persons" under section 25504 and Title 15 of the Securities Act. (Original underscoring.) Thus, they claimed they should be removed as defendants because the "conclusory

---

[4] Liability under section 25504 was predicated on an alleged violation of section 25503, providing liability for the sale of unqualified securities. State laws require that securities sales be "qualified" prior to being offered (§§ 25110, 25120, 25130) and provide that purchasers of securities that have not been qualified may sue for return of the consideration paid, less any income received, or for damages if the purchaser no longer owns the security (§ 25503). Plaintiffs' SAC alleges that "Prosper violated § 25110 of the Code, and is liable to Plaintiffs and the Class under § 25503 of the Code."

allegations [in the SAC] are insufficient to show control because the only underlying fact on which they rely is the Outside Directors' status as directors."

In plaintiffs' opposition to the outside directors' demurrer, they argued that the outside directors had urged the application of the wrong legal standard for examining the sufficiency of their fourth cause of action. They contended that the fourth cause of action was viable because under the plain language of section 25504, the outside directors' status as directors, standing alone, created joint and several liability to the same extent as the liable corporation without additionally alleging and proving control. However, they acknowledged that under the terms of the statute, joint and several liability will not be imposed if the person alleged to be liable can prove they had no knowledge of or reasonable grounds to believe in the existence of the facts on which the liability is alleged to exist.

As for their third and seventh causes of action, plaintiffs acknowledged that in order to survive the outside directors' demurrer, they must plead facts showing that outside directors were in positions of control. Nevertheless, plaintiffs argued that the totality of the facts and circumstances outlined in their SAC showed that the outside directors were "control persons" because "they had the direct or indirect power to control Prosper and they exercised control over the alleged misconduct."

The trial court sustained the outside directors' demurrer to plaintiffs' SAC without leave to amend, and dismissed them from the action. The court found that plaintiffs had failed to state a claim under all three causes of action based on plaintiffs' failure to allege facts that, if true, would show the outside directors exercised actual power or control over Prosper, the primary violator. This appeal followed.

## III.

## DISCUSSION

### A.   Standard of Review

We begin with the well-settled principle that a trial court ruling sustaining a demurrer presents an issue of law that is reviewed de novo. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) The demurrer admits the facts pleaded in the complaint and raises the question whether those facts are sufficient to state a cause of action on any legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Sanchez v. Truck Ins. Exchange*

(1994) 21 Cal.App.4th 1778, 1781 [26 Cal.Rptr.2d 812].) Where the issue of substantive law presents a question of statutory interpretation, our review likewise is de novo. (*Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 578 [18 Cal.Rptr.3d 412].) "The function of a demurrer is to test the sufficiency of the complaint alone and not the evidence or other extrinsic matters. [Citation.]" (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1283 [89 Cal.Rptr.2d 60].)

### B. Fourth Cause of Action Alleging Liability Under Section 25504 for Principal Executive Officers and Directors

As noted, the trial court concluded that each cause of action alleged against the outside directors in plaintiffs' SAC faltered on the element of the outside directors' control over Prosper. With respect to the fourth cause of action, the trial court read section 25504 as requiring that there "needs to be something more than the fact of directorship and something more than behavior in accordance with the responsibilities of directorship. There has to be a control over the activities of the persons directly responsible for the alleged unlawful and actionable acts." In sustaining the outside directors' demurrer to the fourth cause of action, the trial court further concluded, "the language of section 25504 means a director who directly or indirectly controls a person liable under section 25501 or 25503." The court believed that any other interpretation would be "contrary to fundamental principles of corporate governance, and would lead to an absurd result."

Plaintiffs claim the court incorrectly interpreted section 25504 by imposing a control requirement where none exists. Specifically, they claim that section 25504 is not limited to persons who "control the issuer," but rather is broadly worded to impose presumptive liability upon directors and executive officers of any corporation that sells unqualified securities, unless they had neither knowledge nor reasonable grounds to believe in the existence of the facts giving rise to the alleged liability. Accordingly, plaintiffs claim that nothing in section 25504 required them to allege that the outside directors controlled Prosper or that the outside directors had any influence over the decision to sell unqualified securities to plaintiffs; rather, section 25504 expressly imposed presumptive liability on the outside directors simply by virtue of their position with Prosper.

Accordingly, the question before us is whether the liability of an executive officer or director under section 25504, as pled in the fourth cause of action, is contingent upon pleading and proving that the executive officer or director controlled the primary violator. Our review is guided by familiar canons of statutory construction. "Our fundamental task in construing a

statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] *If there is no ambiguity, then we presume the lawmakers meant what they said,* and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196], italics added.)

Section 25504 imposes joint and several liability for securities law violations on "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, *every principal executive officer or director of a corporation so liable,* every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." (Italics added.)

█ We believe the plain language of section 25504 means that principal executive officers and directors are presumptively liable for their corporation's issuance of unqualified securities, regardless of whether they participated in the transactions at issue, or controlled the issuer. Examining the language used in the statute, section 25504 defines liability of various participants in a securities law violation in separate clauses of the statute, with each description describing a different category of individuals (e.g., control persons, partners, principal executive officers and directors, etc.).

The outside directors appear indifferent to the important differences between the state and federal statutes that bear on plaintiffs' claims, calling the statutes "analogous" and "substantively indistinguishable." However Title 15 of the Securities Act does not provide for specific liability of executive officers or directors, but rather uses general language to create liability for persons who "control" the primary violator. In contrast, in enacting section 25504, the California Legislature used markedly different language, creating liability (subject to an affirmative defense) for numerous categories of individuals, including principal executive officers and directors of a corporation that is primarily liable. (Accord, *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 253–254 [70 Cal.Rptr.3d 199].)

Thus, unlike its federal law counterpart, the plain language of section 25504 reveals that imposition of joint and several liability under its provisions is not limited to persons who "control" others who have sold securities in violation of section 25503, as the trial court apparently believed. Rather, section 25504 is worded in a broad fashion to impose liability on "every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, [and] every employee of a person so liable who materially aids in the act or transaction constituting the violation," among others. This structure is suggestive of legislative intent to differentiate section 25504's requirements for finding different categories of individuals liable. (*People v. Youngblood* (2001) 91 Cal.App.4th 66, 71 [109 Cal.Rptr.2d 776] [we must "interpret a statute consistently with the meaning derived from its grammatical structure"].)

Therefore, the trial court erred by giving the statute a labored interpretation inconsistent with the words actually used by imputing the notion of "control" into the officers and directors clause when there is no mention of control in the language actually used. In construing section 25504's officers and directors clause, the court stated, "I don't see any ambiguity here at all. . . . [T]he statute does refer to directors, but it talks about directors who are 'so liable,' which means a director who directly or indirectly controls a person." Significantly, the trial court's interpretation of the statute interjects terms that are not included in the actual statutory language. The statute refers to "a corporation so liable," not a principal executive officer or director "so liable," as indicated by the trial court. (See *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191] [the last antecedent rule provides that " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote' [citations]"].) "A court may not read into a statute qualifications or modifications that will materially affect its operation so as to conform to a supposed intention not expressed by the Legislature. [Citations.]" (*Realmuto v. Gagnard* (2003) 110 Cal.App.4th 193, 203 [1 Cal.Rptr.3d 569].)

Furthermore, " ' "[i]t is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .' [Citations.]" (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 [18 Cal.Rptr.2d 120].) Therefore, we are also entitled to infer that the provision of section 25504 assigning liability to "every principal executive officer or director of a corporation so liable" describes a category of persons not already addressed in a prior, specifically worded clause of the statute.

■ As we have seen, the language of section 25504 imposes joint and several liability for securities law violations on "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503." This category would certainly encompass officers and directors asserting such control. If the trial court's interpretation of section 25504 were correct, there would be no need to separately address the presumptive liability of officers and directors, because liability could be predicated on the officer or director's actual control, not on his or her status as a corporate official. As a result, to apply a control requirement to officers and directors, would be to render surplusage their specific inclusion in statute. "It is a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided. [Citation.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].)

The parties direct our attention to two unpublished federal cases which directly address the issue before us, reaching different conclusions.[5] In *Openwave Systems, Inc. v. Fuld* (N.D.Cal. 2009) 2009 WL 1622164 (*Openwave*) defendants contended that the plaintiff's allegations against corporate officers and directors failed to state a claim under section 25504 because section 25504, like the "control person" provision of Title 15 of the Securities Act, required a defendant to have exercised day-to-day control over the entity's operations. (*Openwave, supra*, at p. *6.) The court rejected this argument based on the "plain language of the statute." (*Id.* at p. *7.) The court pointed out that the language of section 25504 refers to both persons who exercise control and "*every principal executive [officer] or director of a corporation so liable . . . .*" (*Openwave, supra*, at p. *7, original italics.) Although section 25504 was modeled on the federal statutes governing control-person liability, this italicized language in section 25504 indicated that California expanded liability to include certain persons based on their

---

[5] Although it appears unusual to cite an unpublished case, in the context of federal cases, it is permitted. As recently explained in *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, footnote 6 [107 Cal.Rptr.3d 373], "Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority. (Cal. Rules of Court, rule 8.1115; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18 [72 Cal.Rptr.3d 112, 175 P.3d 1170]; *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6 [42 Cal.Rptr.3d 283].)"

The outside directors claim "the weight of authority" supports their argument that plaintiffs must show that the outside directors controlled Prosper in order to be found liable under section 25504. Frankly, we do not view most of the cases cited by outside directors as particularly helpful in deciding this issue because they fail to address the question that has been specifically raised here as to the scope of executive officer and director liability under section 25504. (See, e.g., *Bains v. Moores* (2009) 172 Cal.App.4th 445, 479 [91 Cal.Rptr.3d 309]; *Durham v. Kelly* (9th Cir. 1987) 810 F.2d 1500; *Underhill v. Royal* (9th Cir. 1985) 769 F.2d 1426; *In re WorldCom* (S.D.N.Y. 2007) 377 B.R. 77.)

relationships or connections to the corporation. (*Openwave, supra*, at p. *7.) The court found that "where the language of the California and federal statutes differ, as they do here, the Court finds no basis for holding that the scope of liability under Section 25504 is limited solely to control persons as under federal law." (*Openwave, supra*, at p. *7, fn. omitted.)

In so holding, the *Openwave* court relied on the analysis in *Courtney v. Waring* (1987) 191 Cal.App.3d 1434 [237 Cal.Rptr. 233] (*Courtney*), since that case interpreted a section of the California Franchise Investment Law containing identical wording to section 25504. (*Openwave, supra*, 2009 WL 1622164 at p. *7.) In *Courtney*, the court held that section 31302[6] imposed joint and several liability on control persons *and* each person who is a director or a principal executive officer, regardless of whether they may independently be held liable as a control person. (*Courtney, supra*, at pp. 1440–1441.) *Openwave* agreed with this interpretation, finding "*Courtney* is persuasive since that case interpreted identical language, albeit in a different section of the California Corporations Code." (*Openwave, supra*, at p. *7.)

In contrast to *Openwave*'s persuasive and thorough analysis, the court in *Leason v. Berg* (9th Cir., Mar. 1, 1991, No. 89-15379) 1991 WL 26483 (*Leason*), considered the liability of a corporate director under federal and state securities claims, and held that "[i]n order to be secondarily liable under section 25504, the defendant must exercise some control over the alleged perpetrator of the fraud. [Citation.]" (*Id.* at p. *4.) However, *Leason* failed to offer any persuasive justification for its view. It divines support from *Sherman v. Lloyd* (1986) 181 Cal.App.3d 693, 703 [226 Cal.Rptr. 495], but that decision simply acknowledges that section 25504 provides a basis for holding an officer and director liable. More importantly, *Leason* fails to undertake the requisite analysis of the statutory language used in section 25504 that was so persuasively undertaken in *Openwave*. Consequently, we decline to follow *Leason*.

Lastly, we note that the trial court's interpretation of section 25504 placed heavy reliance upon a public policy analysis. In its written order, the court

---

[6] Section 31302 provides that "[e]very person who directly or indirectly controls a person liable under Section 31300 or 31301, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." The Court of Appeal noted that "Section 25504 is the securities law analog of section 31302 in the Franchise Investment Law . . . ." (*Courtney, supra*, 191 Cal.App.3d at p. 1440, fn. 6.)

indicated that an interpretation of section 25504 allowing the outside directors to incur liability for corporate wrongdoings without "any showing of control over any alleged wrongdoer" would be "absurd" and "contrary to fundamental principles of corporate governance" because "it would deprive corporations of [outside directors'] valuable oversight and deter individuals from serving as outside directors—all of which would undermine corporate governance." The court made similar comments at the hearing on demurrer.

■ Such an approach subordinates the statutory text to an individual judge's subjective interpretation of what is, and what is not, compelling public policy and is particularly inappropriate in a case such as this where the statute's text is plain and unambiguous.[7] (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284] [" 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' "].) Judicial deference to the policy choices enacted into law by the Legislature requires that statutory interpretation focus primarily on the language of the statute.

■ In conclusion, the trial court erred by adopting an unduly narrow interpretation of section 25504 by finding plaintiffs had not stated a claim under their fourth cause of action because they had not alleged facts showing that outside directors had control over Prosper. The plain language of section 25504 expressly subjects outside directors to collateral liability based solely on their status as directors, without requiring any proof of control, unless they can prove that they lacked knowledge of the facts that established the violation.

### C. Third and Seventh Cause of Action Alleging Control-person Liability

■ The plaintiffs also asserted separate causes of action against each named outside director with control-person liability under Title 15 of the Securities Act, which imposes joint and several liability upon every person who "controls any person" liable under the pertinent federal securities laws (count seven) and another provision of section 25504 spelling out liability for every person who "directly or indirectly controls" a person liable under the pertinent state securities laws (count three). The trial court granted outside

---

[7] The purpose of the Corporate Securities Law of 1968, of which section 25504 is a part, is described in a leading treatise in terms reflecting a legislative balancing of competing interests. The "law attempts to provide a scheme of liability . . . that will adequately protect the investing public without undue hardship upon persons who might be potential defendants in such actions. It also establishes rules that are not so extreme as to impede legitimate business transactions." (1 Marsh & Volk, Practice Under the California Securities Laws (2010) ch. 14, Civil Liabilities, § 14.01[3], p. 14-15.)

directors' demurrer to both of these causes of action because "[p]laintiffs have not alleged facts that, if true, would show the Outside Directors' control over the person responsible for the alleged unlawful acts."[8]

Under the federal law, courts have held that mere titles, such as director, are not adequate indicators of control authority. (*McFarland v. Memorex Corp.* (N.D.Cal. 1980) 493 F.Supp. 631, 649; *Herm v. Stafford* (6th Cir. 1981) 663 F.2d 669, 684 ["A director of a corporation is not automatically liable as a controlling person."]; *Dennis v. General Imaging, Inc.* (5th Cir. 1990) 918 F.2d 496, 509–510 [holding that status as a director will not make someone a controlling person absent evidence the alleged controlling person "was able to influence the firm's direction"].) A plaintiff must bolster such a claim with allegations supporting an inference that the director possessed control. (See *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.* (W.D.Mich. 1996) 940 F.Supp. 1101, 1134 ["With respect to the outside directors, plaintiffs must plead facts from which some degree of influence or control over the [corporation's] operations may be inferred." (fn. omitted)].)

Plaintiffs claim the allegations contained in the third and seventh causes of action, when taken as a whole, satisfy the procedural requirement of pleading control. They point out that the SAC included allegations, among others, that (1) the outside directors had the ability to exercise control over Prosper's significant business decisions because of Prosper's relatively small size and status as a small development stage company with only 41 employees and five directors; (2) Prosper's bylaws, which provided that Prosper's business and affairs "shall be managed and all corporate powers shall be exercised by or under the direction of the Board"; (3) the outside directors' collective ownership interest in Prosper, which totaled over 50 percent of the company's stock as of November 30, 2008, and the existence of a voting rights agreement entered into with each other demonstrating the outside directors "acted as a unitary control group"; (4) the outside directors' signatures on certain registration statements with the SEC and participation in a resolution passed relating to the registration statement; and (5) each outside director's association with venture capital firms which infused money into the company

[8] The parties have not directed our attention to any cases decided by a California state court setting out the pleading requirements for control-person liability under section 25504. For purposes of this appeal, they do not dispute that the language "controls a person" as used in section 25504 requires the same pleading allegations as the language "controls any person" as used in Title 15 of the Securities Act. (*Underhill v. Royal, supra,* 769 F.2d at p. 1433 [control-person liability under Cal. law is "substantially the same as the federal statute"].) Therefore, we rely on federal law interpreting the pleading requirements for stating a claim under Title 15 of the Securities Act. Also, many of the federal cases cited in this section of the opinion address control-person liability under section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)). The analysis for establishing control-person liability under Title 15 of the Securities Act and section 20(a) is identical. (*Hollinger v. Titan Capital Corp.* (9th Cir. 1990) 914 F.2d 1564, 1577–1578; *Durham v. Kelly, supra,* 810 F.2d at p. 1503.)

to keep it going which allegedly gave outside directors "the indirect or direct power to influence and direct" Prosper's decisionmaking.

Reflecting the discord in the case law, the parties disagree on the level of specificity with which control must be pled in order to survive a demurrer. (See *In re National Century Financial Enterprises, Inc.* (S.D.Ohio 2008) 553 F.Supp.2d 902, 911–913 [discussing the widely different standards used by federal courts for proving a control person claim].) The outside directors argue that plaintiffs' allegations are insufficient to subject them to control-person liability because "[t]hey were not members of a management committee, did not make any significant business decisions, did not have authority to control the transactions here at issue, and were not vocal or active participants in the day-to-day operations of Prosper." Consequently, the outside directors advocate a standard, adopted by some courts, requiring the pleading of facts showing " 'that actual power or influence was exerted over the alleged controlled person.' [Citation.]" (*In re Calpine Corporation Securities Litigation* (N.D.Cal. 2003) 288 F.Supp.2d 1054, 1081; see *Kersh v. General Council of Assemblies of God* (9th Cir. 1986) 804 F.2d 546, 548; *Adams v. Kinder-Morgan, Inc.* (10th Cir. 2003) 340 F.3d 1083, 1108 [plaintiffs must allege facts showing that the outside directors "individually exerted control or influence over the day-to-day operations of the company"].)

Plaintiffs claim their SAC "adequately alleges that Kagle, Breyer, and Cheng are control persons because the totality of the facts and circumstances show that they had the direct or indirect power to control Prosper . . . ." Consequently, plaintiffs are advocating a more lenient standard, adopted by some courts, requiring that the complaint allege facts supporting a conclusion "that the controlling person had the power to control the controlled person or to influence corporate policy, but that actual exercise of that control need not be alleged. [Citations.]" (*In re Enron Corp. Securities, Derivative & ERISA Litigation* (S.D.Tex. 2003) 258 F.Supp.2d 576, 642; see *In re Baan Co. Securities Litigation* (D.D.C. 2000) 103 F.Supp.2d 1, 24; *Rochez Brothers, Inc. v. Rhoades* (3d Cir. 1975) 527 F.2d 880, 890–891.)

Considering the statutory and regulatory definition of "control," we believe plaintiffs have the better argument. Under California law, the general definition of "control" for use throughout the Corporations Code, including section 25504 (see § 5), is "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a corporation." (§ 160, subd. (a); see also § 25403, subd. (a).) Similarly, the SEC defines "control" in almost identical terms as "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." (17 C.F.R. § 230.405 (2010).)

We see nothing in this language justifying the conclusion that plaintiffs must plead that the outside directors exercised day-to-day control over Prosper's affairs, or that they were culpable participants in the decision not to register or qualify the loan note securities. Rather, both of these definitions of "control" speak in terms of the "direct or indirect . . . *power* . . . to direct or cause the direction of the management and policies" of a liable corporation. (Italics added.) As reasoned in *Lane v. Page* (D.N.M. 2009) 649 F.Supp.2d 1256, this wording focuses "on the power to direct, not on the exercise of that power. Requiring that a defendant have actually exercised power over the primary violator's general operations would involve divining an exercise of power requirement from a [definition] that mentions only the possession of power." (*Id.* at p. 1308.)

Therefore, we conclude that at the pleading stage, a plaintiff satisfies the control requirement by alleging facts from which an inference can be drawn that the defendant " 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.' [Citation.]" (*Brown v. Enstar Group, Inc.* (11th Cir. 1996) 84 F.3d 393, 396, fn. omitted; accord, *In re MicroStrategy, Inc. Securities Litigation* (E.D.Va. 2000) 115 F.Supp.2d 620, 661.)

Courts have also recognized that the question of whether someone qualifies as a controlling person is "a complex factual question." (*Securities and Exchange Commission v. Coffey* (6th Cir. 1974) 493 F.2d 1304, 1318.) As such, it is "not ordinarily subject to resolution on a motion to dismiss," and dismissal is appropriate only when "a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person. [Citations.]" (*Maher v. Durango Metals, Inc.* (10th Cir. 1998) 144 F.3d 1302, 1306; see also *In re Cabletron Systems, Inc.* (1st Cir. 2002) 311 F.3d 11, 41 ["Control is a question of fact that 'will not ordinarily be resolved summarily at the pleading stage.' [Citation.] The issue raises a number of complexities that should not be resolved on such an underdeveloped record."].)

Using this standard to examine the adequacy of plaintiffs' SAC, we conclude plaintiffs have pled facts from which it can reasonably be inferred that the outside directors were control persons under Title 15 of the Securities Act and section 25504. Taken together, plaintiffs' allegations of the outside directors' ownership interests in Prosper, their responsibility under the company's bylaws for managing the company, their presumptive authority to sign key corporate documents (such as regulatory filings), their significant voting power by virtue of their stock holdings and voting agreement, and their affiliation with capital venture firms upon which Prosper relied for its

continuing financing, all support the inference that they possessed the power to directly or indirectly influence Prosper's corporate policies and decision-making, including the decision to offer and sell unqualified loan note securities. Therefore, the third and seventh causes of action are sufficient to withstand the outside directors' demurrer, and the trial court erred in sustaining the outside directors' demurrer to both causes of action without leave to amend.

## IV.

## DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs on appeal.

Sepulveda, J., and Reardon, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 20, 2011, S193848.