POOCHIGIAN, J., Concurring.
I concur in the reversal of the Penal Code[1] section 386 counts and the related conspiracy conviction. I also concur in the affirmance of the remaining convictions but do so with significant misgivings and concern over the number of meritless counts brought to trial. (See U.S. v. Smith (5th Cir., Aug. 11, 1993, No. 92-1612) 1993 WL 346875.)[2]

Quantity of Charges

Initially, the People filed a complaint against defendant alleging civil violations of Business and Professions Code sections 17200 and 17500. Eventually, the prosecution pursued criminal charges. Defendant was indicted on 112 counts. The prosecution dismissed 11 counts after presenting its case-in-chief at trial. The trial court dismissed 24 counts on a defense motion. The jury acquitted defendant on 22 counts. We now reverse and dismiss 27 counts. In their long trek from indictment to appeal, only two felony counts survived.
The.disposition of 84 counts in defendant’s favor raises the question of whether the remaining counts “may stand despite the taint introduced by . . . unfounded counts . . . .” (U.S. v. Smith, supra, 1993 WL 346875 at p. *5.) My concern relates to the due process implications of the prospect that the jury looked at the sheer volume of counts and concluded defendant must be guilty of something.

Evidence and Argument That Defendant’s Conduct Motivated by Race

The number of charges was not the only potential source of unwarranted effect on the jury’s reasoning. There was evidence offered during trial that *1077 included accusations related to race. For example, a former employee alleged defendant targeted sales efforts to certain ethnic groups. In closing argument, the prosecutor said defendant’s behavior was “racist.” Defendant contends the evidence and comment were improper and prejudicial.
The majority concludes defendant’s arguments on this issue “are largely, if not entirely, moot” because the circumstances underlying the grand theft and diversion convictions “did not involve minority groups.” (Maj. opn., ante, at p. 1072.) I am not so certain. In fact, the circumstances may strengthen defendant’s undue prejudice argument.
The definition of prejudicial evidence in this context is that “ ‘which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. ...’ ” (People v. Karis (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189].) The evidence of racial motivation had even less “ ‘effect on the issues’ ” (ibid.) as to the grand theft and diversion counts precisely because they “did not involve minority groups.” (Maj. opn., ante, at p. 1072.) The result being the evidence could arguably be more prejudicial as to those convictions.
Whether or not the evidence pertaining to race was prejudicial depends on whether the jury considered it in convicting on the grand theft and diversion counts. (See Evid. § 1101, subd. (a).) Of course, we will never know, and therein lies the problem.

Section 386 Requires More Than “Ordinary Negligence”

Finally, I want to emphasize the importance of the court’s holding today that section 386 “does not impose strict liability for poor workmanship, nor does it proscribe acts of negligence or incompetence.” (Maj. opn., ante, at p. 1059.)
Section 386 does not convert all contractual disputes with fire protection system contractors into criminal affairs. Nor does it permit prosecution over a contractor’s substandard work which does not rise to the level of criminal negligence.

Conclusion

The number of charges from the grand jury indictment that the prosecution took to trial is concerning. Of course, the magnitude of counts in many criminal cases is a justifiable and important aspect of adequately fulfilling prosecutorial duties in furtherance of justice and the public’s interest. However, under the unique facts and nature of this case related to workmanship *1078 and competency of performance of a construction contract, the quantity and nature of charged counts raises questions about the justness of the result. Yet, the deference that must be given to prosecutorial discretion makes it extremely difficult to fashion a workable rule that guides or limits the government’s charging decisions. Any per se rule prohibiting this conduct would likely be “inflexible and arbitrary.” (U.S. v. Smith, supra, 1993 WL 346875 at p. *5.)
Thus, while I believe it would be just for defendant to receive a new trial on the remaining felony charges, the law does not currently provide for one under these circumstances. For that reason, I concur.

 All further statutory references are to the Penal Code unless otherwise stated.

 This is an unpublished federal case, but it is nonetheless citable. (Nungaray v. Litton Loan Servicing, LP (2011) 200 Cal.App.4th 1499, 1501, fn. 2 [135 Cal.Rptr.3d 442]; Right v. CashCall, Inc. (2011) 200 Cal.App.4th 1377,1394, fn. 3 [133 Cal.Rptr.3d 450]; People v. Evans (2011) 200 Cal.App.4th 735, 752, fn. 11 [133 Cal.Rptr.3d 323]; Helium v. Breyer (2011) 194 Cal.App.4th 1300, 1312, fn. 5 [123 Cal.Rptr.3d 803]; Discover Bank v. Superior Court (2005) 134 Cal.App.4th 886, 892, fn. 2 [36 Cal.Rptr.3d 456]; Hillman v. Britton (1980) 111 Cal.App.3d 810, 816, fn. 2 [168 Cal.Rptr. 852].)