Filed 3/20/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RANDALL S. RICHMAN, | 2d Civil No. B245052 |
| Plaintiff and Appellant, | (Super. Ct. No. 56-2011-00401599-CU-BC-VTA) |
| v. | (Ventura County) |
| MARK HARTLEY, as Trustee, etc., | |
| Defendant and Respondent. | |

        In a sale of real property improved with one to four dwelling units, the seller is required to deliver to the buyer a real estate Transfer Disclosure Statement (TDS) pursuant to the Transfer Disclosure Law.  (Civ. Code, § 1102, subd. (a) et seq.)[1]  In this case the seller did not provide a TDS because the property is "mixed-use," i.e., improved with both residential and commercial buildings.  We conclude that a TDS is required in any transfer of real property "improved with or consisting of not less than one nor more than four dwelling units," even if the property also has commercial uses.  (§§ 1102, subd. (a); 1102.6.)

        This appeal is from a summary judgment in favor of the buyer, respondent Mark Hartley, as trustee of the Mark Hartley Family Trust (Hartley),

---

[1] All statutory references are to the Civil Code unless stated otherwise.

and against the seller, appellant Randall S. Richman (Richman), who sued Hartley for breach of a real estate purchase agreement. The trial court found that Richman was required as a matter of law to deliver a TDS. Because he did not do so, he failed to demonstrate his own performance under the purchase agreement and Hartley was entitled to summary judgment. On appeal, Richman contends that the disclosure requirement applies only to transfers of properties that are solely residential in nature, and not to transfers of mixed-use properties. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, Hartley entered into a written agreement with Richman to purchase Richman's real property on Oak Street in Ventura (the Oak Street property). The property is a single parcel improved with two structures: one commercial building and a residential duplex. The terms of the parties' agreement were set forth in a form entitled "Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate (Non-Residential)" (the Agreement).

Paragraph 9.1 (a) of the Agreement provides that: "Seller shall make to Buyer, through escrow, all the applicable disclosures required by law (See AIR Commercial Real Estate Association ('AIR') standard form entitled 'Seller's Mandatory Disclosure Statement') and provide Buyer with a completed Property Information Sheet ('Property Information Sheet') concerning the property . . . ." Paragraph 26 of the Agreement provides that "Sale will be non contingent and property shall be sold in an 'AS IS CONDITION' with all [its] faults." Under a simultaneously executed lease agreement, Hartley leased the property from Richman for two years.

Escrow was scheduled to close on or before April 14, 2009. Hartley managed the property under the lease agreement from 2007 to 2009, but failed to close escrow, citing Richman's failure to deliver the disclosure documents required by Paragraph 9.1 (a) of the Agreement, including the TDS required by the Transfer Disclosure Law for transfers "of real property . . . improved with or consisting of not less than one nor more than four dwelling units." (§§ 1102, subd. (a) et seq.;

2

1102.6.)  It is undisputed that Richman did not provide any disclosures, including a TDS.

Richman sued Hartley for breach of the Agreement.  Hartley moved for summary judgment, asserting that Richman's failure to deliver the TDS and the other disclosures required by Paragraph 9.l (a) of the Agreement negated his breach of contract action against Hartley.

The trial court granted Hartley's summary judgment motion.  The trial court found that the Transfer Disclosure Law applied to the transfer because of the presence of the two dwelling units on the property and, therefore, that a TDS was one of the "applicable disclosures required by law" within the meaning of Paragraph 9.1 (a) of the Agreement.

The trial court also found that the statutory disclosure requirement was nonwaivable.  Because Richman failed to provide Hartley with a TDS (as well as the two other disclosure forms required by Paragraph 9.1 (a)), Hartley demonstrated that Richman could not establish one element of his breach of contract cause of action – his own performance – and that Hartley was therefore entitled to summary judgment.  Judgment was entered on September 7, 2012.  This timely appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is properly granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  "On appeal, the reviewing court exercises its independent judgment, deciding whether the moving party established undisputed facts that negate the opposing party's claim or state a complete defense.  [Citations.]"  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486-487.)  Where interpretation of a statute forms the basis of a ruling, the reviewing court will independently review the statute to determine the validity of the ruling and reviews the trial court's ruling

3

rather than its rationale. *(County of Solano v. Handlery* (2007) 155 Cal.App.4th 566, 572.)

## B. *Richman's Breach of Contract Cause of Action*

Richman's complaint alleged a single cause of action against Hartley for breach of contract. To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach; and (4) the resulting damage to the plaintiff. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.) Hartley's summary judgment motion asserted that Richman could not, as a matter of law, prove that he had performed under the contract because he had not made "all the applicable disclosures required by law" as required by Paragraph 9.1 (a) of the Agreement. Hartley contended that a TDS was "required by law" in the transaction because the improvements on the property included two dwelling units. Richman insisted that he was not required to comply with the Transfer Disclosure Law, which, he contends, was intended to apply only to transfers of residential real property, not to a mixed-use property such as the Oak Street property. The trial court agreed with Hartley. The parties' dispute requires us to construe section 1102, which defines the scope of the Transfer Disclosure Law.[2]

## C. *The Transfer Disclosure Law*

The Transfer Disclosure Law applies, with enumerated exceptions, to sales or other transfers of "real property . . . improved with or consisting of not less than one nor more than four dwelling units." (§ 1102, subd. (a).) Section 1102.3 provides that "[t]he transferor of any real property subject to this article shall deliver to the prospective transferee the written statement required by this article . . . ." The

---

[2] Although the trial court's grant of summary judgment was based on Richman's failure to deliver any of the disclosures required by Paragraph 9.1 (a), we consider only the failure to deliver the TDS required by section 1102 because Richman's failure to comply with section 1102 moots his other claims.

4

form of the required TDS is set forth in detail in section 1102.6. It was the Legislature's purpose that the Transfer Disclosure Law "'reduce litigation and disputes pertaining to certain real property sales transactions.'" (*Realmuto v. Gagnard* (2003) 110 Cal.App.4th 193, 203, quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1406 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 2.)[3]

It is undisputed that Richman did not deliver a TDS to Hartley. Our task, then, is to determine whether the Richman/Hartley transfer was "subject to this article," i.e., whether the Legislature intended that a seller of mixed-use property provide the buyer with a TDS. (§ 1102.3.) In deciding this issue, we are guided by settled principles of statutory interpretation. "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' [Citation.]" (*Realmuto v. Gagnard*, *supra*, 110 Cal.App.4th at p. 199.) "'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*)

We begin with the words of the statute. (*Wilcox v. Birthwhistle* (1999) 21 Cal.4th 973, 977.) "'. . . If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Ibid.*) Only if the language permits more than one reasonable interpretation do we look to extrinsic aids, such as the "'. . . ostensible objects to be achieved, the evils to be remedied, the legislative history, public

---

[3] On our own motion, we take judicial notice of the legislative history of Senate Bill No. 1406 and the 1994 amendments enacted as Senate Bill No. 1377, which became law in 1995. (Evid. Code §§ 452, subd. (c), 459; *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [appellate court may take judicial notice of legislative history materials on its own motion].)

5

policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation]" (*Id*., at pp. 977-978.)

In 1985, the Legislature enacted Senate Bill No. 1406, which requires a seller to deliver to a buyer a real estate TDS in "any transfer . . . of real property . . . improved with or consisting of not less than one nor more than four dwelling units."[4] (§ 1102, subd. (a).) These words are clear and unambiguous. Even Richman does not contend that the language of the statute is ambiguous. Neither the original enactment of the Transfer Disclosure Law nor any subsequent amendments has limited its application to transfers of real property that contain *only* residential units, and no published decision of an appellate court has so limited it. By its language, then, section 1102 applies to any transfer of real property on which are located one to four residential units, regardless of whether the property also has a commercial use.

Although we need look no further than the unambiguous words of section 1102, the statutory scheme of which it is a part also supports our conclusion. Section 1102.2 lists 10 types of real property transfers to which the Transfer Disclosure Law does not apply. These include transfers pursuant to court order (§ 1102.2, subd. (b)), transfers by a fiduciary in the course of administering a decedent's estate (*id.*, at subd. (d)), transfers from one coowner to another coowner (*id.*, at subd. (e)) and transfers between spouses resulting from a marital dissolution (*id.*, at subd. (g)). Section 1102.2 does not exclude transfers of mixed-use property from the Transfer Disclosure Law's coverage.

Application of the Transfer Disclosure Law to mixed-use property where the residential portion is four or fewer units is also supported by other enactments of the Legislature which expressly defined "residential real property" to

---

[4] Senate Bill No. 1406 became law on January 1, 1987. It is codified at section 1102 et seq., "Disclosures Upon Transfer of Residential Property."

6

*exclude* mixed-use properties.  For instance, Business and Professions Code section 11423, adopted in 1992, defines "residential real property" to mean "real property located in the State of California containing *only* a one- to four- family residence." (*Id.*, at subd. (a)(3).)  The same language was used in section 2954.8, adopted in 1979, governing the handling of impound accounts by financial institutions.  That section limits its application to loans made upon the security of real property "containing *only* a one- to four- family residence."  (*Id.*, at subd. (a).)

If the Legislature had intended the Transfer Disclosure Law not to apply to a transfer of mixed-use property, it could have done so by adding the word "residential" before "real property" in section 1102.  It did not.  Notwithstanding its use of more specific words in other statutes, and despite the 1995 amendments to the Transfer Disclosure Law discussed above, the Legislature has made no change that limits the disclosure obligation to solely residential property or excludes its application to mixed-use parcels.  We therefore hold that section 1102 applies to any transfer of real property "improved with or consisting of not less than one nor more than four dwelling units," even if the property also has commercial uses.  (*Id.*, at subd. (a).)

Richman, nevertheless, contends that applying the Transfer Disclosure Law to mixed-use properties is inconsistent with the Legislature's intent.  He argues that the parties' transaction was essentially a commercial property transaction and that the Legislature did not intend to protect buyers engaged in commercial transactions when it enacted the Transfer Disclosure Law.  It is true that the Legislature did not intend the Transfer Disclosure Law to apply to commercial real estate transactions.  (*Smith v. Rickard* (1988) 205 Cal.App.3d 1354, 1361; 2 Miller & Starr, Cal. Real Estate § 3:44 (3d ed.), pp. 261-262.)  But this does not help us resolve the question raised by this case, which is whether the Transfer Disclosure Law applies to transfers of *mixed-use* property.

Richman urges us to consider the "essence of the transaction" to determine whether it was residential in nature (disclosure required) or commercial

7

in nature (disclosure not required).[5]  Richman would have us infer the essentially commercial nature of the transaction from the parties' experience with commercial property transactions and their use of preprinted forms used in commercial transactions.  The statute's unequivocal definition of the transfers that fall within its ambit eliminates the need for such inferences, however.  If a property is "improved with or consist[s] of" one to four dwelling units, it is subject to the Transfer Disclosure Law, regardless of whether it may also have a commercial use.  (§ 1102, subd. (a).)  Moreover, requiring trial courts to determine the "essence" of a transfer from the parties' evidentiary showings would lead to extensive litigation, as the parties to a failed transfer would inevitably have conflicting views of its "essence."  This would defect the Legislature's stated intent "to reduce litigation and disputes pertaining to certain real property sales transactions."  (*Realmuto v. Gagnard*, *supra*, 110 Cal.App.4th at p. 203.)

In a similar vein, Richman contends that Hartley is not the "kind of buyer" the Legislature intended to protect by enacting the Transfer Disclosure Law.  He argues that the law was intended to protect "unsophisticated" residential purchasers, not buyers, like Hartley, who are well-versed in commercial real estate transactions.  The courts have recognized the Legislature's interest in protecting unsophisticated residential home purchasers.  (See, e.g., *Smith v. Rickard*, *supra*,

---

[5] The parties litigated this issue in the summary judgment motion.  Both parties offered evidence in support of their respective theories, including evidence of custom and practice in the Ventura County real estate industry.  Richman relied primarily on his own declaration, which recounted his extensive experience as a real estate developer and investor, and excerpts from the legislative history of section 1102, of which he asked the trial court to take judicial notice.  Hartley submitted the declaration of a Ventura real estate broker, Joseph Kapp.  The trial court admitted some parts of this evidence and rejected others.  On appeal, each party challenges the trial court's evidentiary rulings that did not favor his position.  Because the defining issue is one of statutory interpretation, there is no need to resolve these evidentiary issues.  (*People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432.)

205 Cal.App.3d at p. 1361 ["section 2079 et seq. is one of those statutory schemes where the Legislature distinguishes between residential and commercial properties in order to protect unsophisticated buyers and owners of residential property from those with greater knowledge and bargaining power"]; *Easton v. Strassburger* (1984) 152 Cal.App.3d 90, 102, fn. 8 [distinguishing between the "residential home buyer who is often unrepresented by a broker, or is effectively unrepresented because of the problems of dual agency [and] a purchaser of commercial real estate [who] is likely to be more experienced and sophisticated in his dealings in real estate"].) The Legislature's purpose to protect residential, not commercial, buyers does not, however, require the conclusion that it did not intend the Transfer Disclosure Law to apply to transfers of mixed-use properties, which by definition include residential units. Nothing in the statute or its legislative history supports an exception to section 1102 based on the sophistication of the buyer.

There is no need to consider Richman's theories for determining whether a transaction is "in essence" commercial or residential because the Legislature has provided a numeric means of determining whether the Transfer Disclosure Law applies: it applies if the property is improved with one to four residential units, regardless of how it is otherwise improved. Had the Legislature wished the real estate industry to determine, through successive litigations, whether a transaction is primarily commercial or residential, it would not have provided a bright line for determining the applicability of the Transfer Disclosure Law. Richman's construction would blur that bright line.

Section 1102, subdivision (a) applies to property "improved with *or* consisting of" one to four dwelling units. Richman urges us to focus on the term "consisting of" and to interpret that term narrowly to mean "that the statute applies exclusively to *residential* property transactions as defined by a property containing one to four dwelling units." This contention is meritless. First, it ignores the alternate qualifier "improved with." It is undisputed that the subject property is "improved with" two residential units. Therefore, section 1102 applies to the

9

transaction regardless of how we interpret the term "consisting of."  Second, Richman would have us read a new word – "residential" – into the statute. Appellate courts may not rewrite unambiguous statutes.  (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 822.)  As explained above, if the Legislature had intended to limit the application of section 1102 to solely residential properties, it would have done so.  For the sake of thoroughness, however, we address Richman's argument, which is based on a misreading of our decision in *Smith v. Rickard*, *supra*, 205 Cal.App.3d 1354.

In *Smith*, we analyzed section 2079, which requires a licensed real estate broker who has a written contract with the seller of "*residential* real property comprising one to four dwelling units" and who has listed that property for sale "to disclose to [a] prospective purchaser[] all facts materially affecting the value or desirability of the property that an investigation would reveal. . . ."  (*Smith v. Rickard*, *supra*, 205 Cal.App.3d at p. 1360.)  In *Smith*, we did not have to read the word "residential" into the statute because it was already there.  Our task was to determine whether the property was in fact "residential" for purposes of section 2079.  The property at issue in *Smith* was a 50-acre commercial avocado and lemon orchard improved with a residence.  After the sale was completed the buyer discovered that the avocado trees were infected with a fungus that was killing the trees and sued the broker for negligence in failing to inspect and disclose material defects in the avocado orchard.  We held that the Legislature intended section 2079 to apply only to "brokers selling residential properties of four or fewer dwellings, and not to commercial real estate transactions."  (*Smith v. Rickard*, *supra*, at p. 1360.)  We determined that the property was not residential:  "The presence of a residence on the commercial property does not transform the property into residential property."  (*Id.*, at p. 1363.)  Because section 2079 applies only to "residential" property, we concluded that the "broker has no duty to inspect" the commercial parts of the property.  (*Id.*, at pp. 1356-1357.)

In the absence of any case law defining the scope of section 1102,

10

Richman urges that *Smith*'s construction of section 2079 is controlling here, particularly our statement that "[t]he presence of a residence on the commercial property does not transform the property into residential property."[6] (*Smith v. Rickard*, *supra*, 205 Cal.App.3d at p. 1360.) As explained above, however, that comment was made in the context of determining whether the property was "residential," as opposed to commercial, which is a critical distinction in the application of section 2079, but not in the application of section 1102, which does not specify that the property be "residential." Accordingly, Richman's argument that we should read the word "residential" into section 1102 finds no support in *Smith*. On the contrary, *Smith* supports our holding here. In *Smith*, we compared section 2079 to several other statutes, including section 1102, and observed that section 1102, unlike section 2079, does not "require that the property be used only for residential purposes." (*Smith v. Rickard*, *supra*, at p. 1362.) Although we did not construe section 1102 in *Smith*, our observation is consistent with our holding here that section 1102 does not require that the property be used only for residential purposes, but applies to all transfers of real property improved with or consisting of one to four residential units, regardless of whether it also has a commercial use.

### D. *Waiver of the Transfer Disclosure Law*

Richman contends that Paragraph 26 of the Agreement constituted a waiver of the disclosure requirements contained in Paragraph 9.1 (a). Paragraph 26 states: "Sale will be non contingent and property shall be sold in an 'AS IS CONDITION' with all its faults." Although this provision may have created a triable issue as to whether the parties intended to waive the non-statutory disclosures of Paragraph 9.1 (a), it could not, as a matter of law, operate as a waiver

---

[6] Richman observes correctly that sections 1102 and 2079 are "complementary" statutes. For example, both statutes were enacted as a response to *Easton v. Strassburger*, *supra*, 152 Cal.App.3d 90, and both statutes utilize the same disclosure form.

of the Transfer Disclosure Law.

In 1994 the Legislature amended section 1102 to add the provision that: "Any waiver of the requirements of this article is void as against public policy." (§ 1102, subd. (c).) The Legislature's stated purpose in enacting this change was to clarify "that the delivery of a real estate transfer disclosure statement may not be waived in an 'as is' sale, as held in *Loughrin v. Superior Court* (1993) 15 Cal.App.4th 1188." (§ 1102.1, subd. (a).) Section 1102 required Richman to provide Hartley with a TDS, and public policy prohibited waiver of that requirement.

Richman's delivery of a TDS was a statutory condition precedent to Hartley's duty to perform under the Agreement. (*Realmuto v. Gagnard*, *supra*, 110 Cal.App.4th at pp. 201-202.) Generally, a party's failure to perform a condition precedent will preclude an action for breach of contract. (*Id.*, at p. 205.) Because Richman did not perform that condition precedent, Hartley was not required to perform as a matter of law and summary judgment was properly granted.

### E. Extent of Disclosure Obligation

The parties appear to agree that the disclosure obligation, if it exists, applies to the dwelling units only and not to the entire property. That issue is not properly before us, however. Richman did not deliver a TDS for any part of the property and his contention on appeal is that he was not required to deliver a TDS at all. The scope of any TDS he was required to deliver was not the subject of an actual controversy between the parties. To be ripe for resolution, "'[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . .'" (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d158, 169-171.) Because there is no actual controversy concerning the extent of the disclosure obligation, we do not decide it.

12

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

CERTIFIED FOR PUBLICATION.


O'DONNELL, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Henry J. Walsh, Judge

Superior Court County of Ventura
_____


Goldenring & Prosser, Peter A. Goldenring and James E. Prosser for Defendant and Respondent.

Law Office of Richard L. Francis & Associates, Richard L. Francis, Charles W. Oaks for Plaintiff and Appellant.