Filed 6/8/23  Dominguez v. Iconiq Capital Management CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARLEY DOMINGUEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ICONIQ CAPITAL MANAGEMENT,<br>LLC,<br><br>    Defendant and Respondent. | A165287 & A165791<br><br><br>(San Francisco City &<br>County Super. Ct. No. CGC-<br>21-589700) |

Marley Dominguez sued Iconiq Capital Management, LLC (Iconiq or company) for breach of contract and breach of the implied covenant of good faith and fair dealing after it refused to pay him a finder's fee pursuant to the parties' Fee Agreement (agreement).  The trial court granted Iconiq's summary judgment motion — concluding Dominguez failed to fulfill a condition precedent to being owed the fee — and it entered judgment for the company.  Thereafter, the court awarded Iconiq attorney fees and costs under the agreement.  Dominguez appeals the judgment and the fees and costs order.  We affirm.

1

## BACKGROUND

Iconiq — a privately held investment firm with a real estate portfolio — has a business relationship with Oxford Capital Group, LLC (Oxford), a real estate investment firm.[1] Jeffrey Felder, Iconiq's managing director of real estate investments, periodically communicates with Oxford employee Sarang Peruri about "potential opportunities" for the companies.

In 2019, Iconiq was interested in purchasing an apartment building owned by Oxford on Michigan Avenue in Chicago (the property). For several months in early 2019, Felder and Peruri negotiated a potential acquisition on behalf of their respective companies; during that process, Iconiq toured the property, conducted market research, and engaged in "due diligence and underwriting using financial information provided by Oxford." By mid-May, however, negotiations stalled because the two companies couldn't agree on a purchase price. The company planned to "revisit acquiring the [property] over the next year or two."

In 2020, Dominguez — an experienced real estate professional — expressed interest in working at Iconiq. The company did not offer him a job, but it retained him as independent advisor to identify properties for acquisition. On July 10, the parties entered into the agreement; Felder testified its purpose was to incentivize Dominguez to provide the company with information it "did not already have, and to identify new properties." Section 1(a) of the agreement requires Dominguez to use his "best efforts, skill, judgment and abilities to identify" so-called "Target Properties" —

---

[1] In the trial court, Dominguez objected to some of the evidence summarized here, but the court did not rule on the objections and he has not renewed his objections on appeal. Accordingly, the evidence is properly before us. (See *Wellsfry v. Ocean Colony Partners, LLC* (2023) 90 Cal.App.5th 1075, 1082 & fn. 3.)

2

properties in specific locations meeting certain acquisition criteria — and to effectuate prospective purchases of those properties by providing "customary and reasonably requested services required in connection therewith," including property valuations and due diligence. Additionally, section 1(e) of the agreement requires Dominguez to "cooperate and lend full assistance" to the company in connection with its purchase of properties "sourced by another advisor."

The agreement sets forth the terms and conditions upon which the company will pay Dominguez a fee if it purchases a "Target Property procured through" him. (A target property procured through Dominguez and purchased by the company under the terms and conditions outlined in the agreement is an "Acquired Property.") Under sections 1(c) and 4(a), Dominguez's entitlement to a fee "with respect to any Acquired Property is *expressly conditioned on*, and the fee shall be earned by and paid to [Dominguez] for services rendered, . . . *if and only if*" three conditions are met. (Italics added.) The agreement refers to these conditions as " 'Fee Payment Conditions.' " (Bold face omitted.)

First, Dominguez must "specifically" identify a target property for Iconiq's consideration in writing and provide the company with "all relevant information in [his] possession or control that would enable [the company] to evaluate such property." Second, if the company "wishes to pursue the acquisition of such Target Property," it must notify Dominguez in writing. This notification — a "Preliminary Expression of Interest with respect to such Acquired Property" — must acknowledge "whether the Target Property identified by [him] is a marketed property or an off-market property." Third, Iconiq must close "on the acquisition of such Acquired Property." Section

3

11(e) entitles the prevailing party in any legal action to enforce the agreement to recover reasonable attorney fees and costs.[2]

On July 22, 2020, Dominguez called Peruri, mentioned he "was working with a potential buyer," and asked whether Peruri would "be interested in selling" the property. In response, Peruri said Oxford and Iconiq had discussed a potential sale in 2019 (and Iconiq had performed underwriting on the property), but that the two companies could not agree on a purchase price. Peruri offered to reach out to the company to inquire about a potential acquisition. Thereafter, Peruri emailed Felder — forwarding their 2019 email exchange — to see if the company would be interested in purchasing the property. Peruri indicated he had received "a random call from a mutual friend," but that he wanted to discuss a potential deal "directly with" Felder. Immediately thereafter, the two companies resumed negotiations for the purchase of the property, with Iconiq relying in part on the underwriting and diligence it had conducted in 2019.

On July 29, 2020 — about a week after his call with Peruri and immediately after his call with Kim — Dominguez emailed Felder, Kim, and another Iconiq employee. The email's subject line contained the property's name; the body of the email listed the property's "implied

---

[2] Shortly after executing the agreement, Felder told Dominguez he would receive a fee only if Iconiq purchased properties "sourced or originated" by Dominguez; he also encouraged Dominguez to share properties of potential interest so the company could compare those properties to its "pipeline and narrow the list of prospective acquisitions to discuss." During two mid-July 2020 phone calls with Don Kim, Jr., the company's vice president of real estate investments, Dominguez did not mention the property even though he was familiar with it and knew Oxford would eventually want to sell it. During a third call on July 29, Kim mentioned properties about which the company was already aware — including the property — and asked for Dominguez's feedback on it.

stabilized RevPar" — revenue per available room — and stated, "[t]his isn't the exact audited number, but it is pretty close." In mid-August, Iconiq asked Dominguez for information on underwriting expenses and profit margins in Chicago. He agreed to provide the information. Later that month, the company told Dominguez it had exchanged letters of intent with Oxford regarding the property; the company noted it might contact him for additional details if the two companies came "to agreement on price." He responded, "[g]ood to hear," then provided information regarding another property. On August 31, Dominguez inquired about his entitlement to a fee. Two days later, Felder responded that he hadn't "forgot[ten] about this. We just don't know if [the property] goes our way yet." Felder also noted the companies were close to reaching an agreement in part because Iconiq had negotiated favorable acquisition terms.

On September 4, 2020, Iconiq and Oxford signed a letter of intent for the purchase of the property; escrow closed in October. During this time period, Dominguez did not communicate with the company. After the deal closed, however, he demanded a fee of nearly $1 million. The company refused to pay it. Thereafter, Dominguez filed a lawsuit for breach of contract and breach of the implied covenant of good faith and fair dealing for failing to pay the "fee he earned." As relevant here, the operative complaint alleged "the three Fee Payment Conditions were satisfied."

Iconiq moved for summary judgment. Over Dominguez's opposition, the trial court granted the motion. It concluded Dominguez failed to fulfill a condition precedent to earning the fee — to identify the property as a "target property" in writing. As the court observed, his "cursory" email referencing the property's revenue per available room did not "specifically" indicate the property was a "target property." Instead, Dominguez's "helpful

5

conduct" was "consistent with his obligations under section 1(e)" of the agreement, which required him "to 'cooperate and lend full assistance' as to properties sourced by another." The court also determined the company "never delivered the required Preliminary Expression of Interest" as to the property to Dominguez, and that there "was no substantial compliance with either of these conditions." Finally, the court found he failed to present clear and convincing "evidence demonstrating a triable issue of material fact that [the company] waived" the conditions precedent. The court entered judgment for the company, and subsequently awarded it $500,000 in attorney fees and costs under the agreement.

## DISCUSSION

Dominguez's principal contention is the trial court erred by granting Iconiq's summary judgment motion. We review the grant of summary judgment according to familiar principles. Summary judgment is proper when — as here — the defendant shows " 'that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action' " and the plaintiff fails to " 'show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) We independently review the order granting summary judgment. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)

To prevail on claims for breach of contract and breach of the implied covenant of good faith and fair dealing, a plaintiff must prove they "performed all conditions on [their] part" or that they were "excused from performance." (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 380; *Merced Irrigation Dist. v. County of Mariposa* (E.D.Cal. 2013) 941 F.Supp.2d 1237, 1280.) When "a defendant's duty to

6

perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." (*Consolidated World Investments, Inc.*, at p. 380.) This circumstance is known as a condition precedent — an action " 'that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises.' " (*Estate of Jones* (2022) 82 Cal.App.5th 948, 953; see Civ. Code, §§ 1436, 1439.) A party's failure to perform a condition precedent precludes a breach of contract claim. (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1192; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1389.)

Here, it is undisputed the agreement contained express conditions precedent to Iconiq's obligation to pay Dominguez a fee. (*Estate of Jones*, *supra*, 82 Cal.App.5th at p. 953.) The first condition — delineated in sections 1(c) and 4(a) — required him to "specifically" identify a target property for the company's consideration in writing and to provide "all relevant information in [his] possession or control that would enable [the company] to evaluate such property." He did not, as a matter of law, satisfy this condition. Even viewing Dominguez's evidence in the light most favorable to him (see *Aguilar v. Atlantic Ritchfield Co.*, *supra*, 25 Cal.4th at p. 843), we conclude his July 29, 2020 email listing the property's revenue-per-room statistics neither "specifically" identified the property as a target property nor provided "all relevant information" necessary to enable the company to evaluate it.

Because Dominguez did not satisfy the first condition precedent, Iconiq was not required to pay him a fee under the agreement. (*Richman v. Hartley*, *supra*, 224 Cal.App.4th at p. 1192 [vendor's failure to provide required transfer disclosure statement excused purchaser's performance]; *Alki*

7

*Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 592 [defendant's contractual obligation to perform "was excused for failure of the condition precedent"]; *McDorman v. Moody* (1942) 50 Cal.App.2d 136, 140 [tender of stock "was a necessary condition precedent" to assignee's right to "enforce payment of the unpaid balance"].) That Dominguez's email may have provided the company with "notice" of the property is of no moment — and it conveniently elides the fact that Iconiq had known of the property since 2019 — he concedes the agreement required him to, at minimum, classify the property as a target property. He did not do so, and we cannot rewrite the agreement's " 'plain and unambiguous' " language to sweep in his conduct. (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 923.)

Summary judgment was proper for an additional reason: Iconiq did not deliver a "Preliminary Expression of Interest" to Dominguez. Sections 1(c) and 4(a) of the agreement provide that if the company wished "to pursue the acquisition of such Target Property," it had to notify Dominguez in writing and acknowledge "whether the Target Property identified by [him] is a marketed property or an off-market property." It is undisputed the company did not satisfy this condition precedent — the company did not notify him in writing whether the property was listed for sale. In an effort to create a triable issue, Dominguez points to emails the company sent him in late August and early September 2020 updating him on the status of the deal. But neither email satisfies the explicit requirements of this condition precedent, even when considered in light of the nondisclosure clause in the letter of intent. (See *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1379 [on summary judgment, "only material factual disputes bear any relevance"].)

8

We reject Dominguez's contention that a jury could conclude Iconiq waived this condition. "Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations.] Ordinarily it is a question for the trier of fact. However, where there are no disputed facts and only one reasonable inference may be drawn, the issue can be determined as a matter of law." (*Gill v. Rich* (2005) 128 Cal.App.4th 1254, 1264, fn. 10.) The burden is on the party claiming waiver "to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1148, internal quotation marks omitted.) Dominguez has not satisfied this demanding standard. Felder's email stating he hadn't "forgot[ten] about" Dominguez's request for a fee does not amount to clear and convincing evidence the company waived compliance with the "Preliminary Expression of Interest" requirement. Thus, Dominguez has not demonstrated the existence of a triable issue of material fact with respect to waiver. (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

Finally, we agree with the trial court that Dominguez failed to show a triable issue of fact as to whether he substantially complied with the agreement. " '[S]ubstantial performance is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects.' [Citation.] 'What constitutes substantial performance is a question of fact, but it is essential that there be no willful departure from the terms of the contract, and that the defects be such as may be easily remedied or compensated, so that the promisee may get practically what the contract calls for.' " (*Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th

9

357, 364.) To establish a triable issue of material fact, the "plaintiff must produce 'substantial' responsive evidence. . . . '[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415, brackets in original.)

The purpose of the agreement was to identify properties for Iconiq, not to revisit those of which it was already aware. It is undisputed the company knew about the property well before entering into the agreement; indeed, it had an ongoing business relationship with Oxford, it had engaged in negotiations to acquire the property in 2019, and it planned to revisit a potential acquisition in 2020 or 2021. And the company negotiated the deal with minimal assistance from Dominguez. He may or may not have been responsible for reviving the company's interest in the property, but it cannot be said his modest assistance resulted in the company getting " 'practically what the [agreement] calls for.' " (*Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C., supra,* 41 Cal.App.5th at p. 364; cf. *Cline v. Yamaga* (1979) 97 Cal.App.3d 239, 245–246 [expiration of broker license when lawsuit was filed did not preclude recovery where broker was licensed when services were rendered].) Dominguez does not establish error with respect to the trial court's conclusion that he failed to show substantial compliance.

In sum, we conclude summary judgment was properly granted. Given our conclusion, we reject Dominguez's cursory and derivative challenge to the attorney fee award.

## DISPOSITION

The judgment and the order awarding attorney fees and costs are affirmed. Iconiq is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.

A165287 & A165791