Filed 2/26/24  Mesquite Country Club Condominium Homeowners etc. v. Save Oswit Canyon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MESQUITE COUNTRY CLUB CONDOMINIUM HOMEOWNERS ASSOCIATION, | D082762 |
| Plaintiff and Respondent, | (Super. Ct. No. CVPS2203251) |
| v. | |
| SAVE OSWIT CANYON, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Carol A. Greene, Judge.  Affirmed.

Burke, Williams & Sorensen, Mark J. Mulkerin, Richard J. Reynolds, and John R. Horstmann for Defendant and Appellant.

Capobianco Law Offices, Nino Capobianco, Derek Wallen; Slovak Baron Empey Murphy & Pinkney, Shaun Murphy; Murphy, Pearson, Bradley & Feeney, Jeff C. Hsu and Marlin Y. Gillespie for Plaintiff and Respondent.

## INTRODUCTION

In August 2022, Respondent Mesquite Country Club Condominium Homeowners Association (the HOA) sued Appellant Save Oswit Canyon, Inc., which is doing business as the Oswit Land Trust, a non-profit corporation (Oswit). The complaint alleged causes of action for: (1) breach of the Declaration of Covenants, Conditions and Restrictions for Mesquite Country Club Condominiums recorded on June 14, 1984 (the CC&Rs) and the 1984 Lease Agreement between the HOA and the Mesquite Golf & Country Club (as amended by a 1988 settlement agreement and a 2004 judgment) (the lease); (2) nuisance; (3) nuisance per se; and (4) declaratory relief.[1]

Oswit filed a special motion to strike under Code of Civil Procedure[2] section 425.16.[3] The trial court denied the motion, and Oswit appealed.

Oswit contends its protected statements and conduct are the gravamen of the HOA's causes of action and that the HOA cannot meet its burden of showing a likelihood of success on the merits. We disagree and affirm the order.

---

[1] The complaint also contained a cause of action for trespass, which the HOA subsequently dismissed, and two additional causes of action against another defendant, Ramin Saghian.

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] Section 425.16 is commonly referred to as the anti-SLAPP statute because a special motion thereunder seeks to strike a " '[s]trategic lawsuit against public participation,' " or SLAPP. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint*

In its complaint filed on August 12, 2022, the HOA explains that it was designed as an integrated residential golf course community and that about a third of its 600 condominium units are situated adjacent to an 18-hole golf course.  Palms Partners Capital, LLC (Palms Partners), owned by Saghian, acquired the Mesquite Golf & Country Club (the Club) and the golf course in 2014.  Thereafter, Palms Partners allegedly failed to maintain the golf course and the Club despite several notices from the HOA regarding deficiencies and dangerous conditions, which the HOA contends are lease violations and public nuisances.  As a result of Palms Partners' lack of action, the HOA describes both the Club and golf course as "not useable."

Oswit purchased the golf course from Palms Partners on July 26, 2022.  Palms Partners retained ownership of the Club.  According to the HOA's complaint, Oswit confirmed in written materials disseminated to homeowners that it would convert the golf course to a public nature preserve and botanical garden.  The HOA further submits that an attorney for a principal of Oswit and one of its significant donors, The Prescott Foundation, stated that the new preserve, to be known as Prescott Preserve, will never operate as a golf course.  The complaint alleges that "[s]ince its purchase of the Golf Course, it appears that Oswit has completely abandoned the Golf Course and has stopped all maintenance, landscaping and irrigation, contributing to its further deterioration."

B.    *The Anti-SLAPP Motion*

Oswit argued in its anti-SLAPP motion that the HOA's complaint was intended to stifle Oswit's protected activity in order to promote a competing residential development proposal for the property.  It maintained that the

HOA's demand that the property be used as a golf course was "absurd." In support, it pointed to a declaration from Saghian in which he stated that the golf course was unprofitable during the entire term of Palms Partners' ownership and that he shut down golf course operations on July 15, 2022 (before Oswit purchased the property).

According to Oswit, the HOA based its claim for anticipatory breach of the CC&Rs and the lease on Oswit's public statements regarding its intention to dedicate to public use the former golf course property. It pointed to allegations in the complaint that Oswit disseminated written materials to HOA members and stated its intentions to violate the CC&Rs and lease. Further, Oswit filed the Declaration of Jane Garrison, its founder and president, in support of its motion and, based thereon, explained that it had "for years made loud and clear its intention to protect land in the Coachella Valley, and specifically communicated to [the HOA] Board its vision regarding the failed Mesquite Golf Course."[4] Oswit argued the HOA board repeatedly stifled Garrison's efforts to speak with homeowners regarding Prescott Preserve. It did not specifically contend that the nuisance or declaratory judgment causes of action arose from protected activity.

Turning to the second step of the analysis, Oswit maintained the HOA would not succeed on the merits of any of its claims. On the first cause of action, Oswit pointed out that neither the CC&Rs nor the lease requires the property to be operated as a golf course. As to the nuisance claims, Oswit argued the HOA lacked standing because the homeowners were the real parties in interest. It otherwise submitted the HOA could not establish causation because Palms Partners was responsible for the nuisance conditions and, if anything, Oswit had begun remediation efforts since

_____

[4]    The admissibility of this evidence will be addressed *post*.

4

purchasing the property. Because the seventh cause of action sought a declaration consistent with the other claims, Oswit argued it too failed.

C.  *The Anti-SLAPP Order*

Following a hearing, the trial court issued a minute order denying the anti-SLAPP motion. The court concluded that the anti-SLAPP statute did not apply because Oswit was "not being sued for talking about converting the golf course into a nature preserve, but for taking steps to actually make that conversion occur, and is therefore being sued for conduct rather than speech." It cited the holding from *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*) that, "[a]s many Courts of Appeal have correctly understood, to read the 'arising from' requirement differently, as applying to speech leading to an action or evidencing an illicit motive, would, for a range of publicly beneficial claims, have significant impacts the Legislature likely never intended."

DISCUSSION

A.  *Evidentiary Objections*

Oswit filed numerous declarations in conjunction with its anti-SLAPP motion, including the ones referenced *ante*. The HOA filed written objections to all of them. The trial court overruled the objections, indicating they all went to "evidence not considered." The HOA did not renew its objections on appeal.

On the first step of the anti-SLAPP analysis, we are not required to accept the complaint's allegations as true if the defendant submits contrary evidence. (*Wilson*, *supra*, 7 Cal.5th at p. 887.) Rather, we may look beyond the pleadings to consider evidentiary submissions by the parties. (*Ibid.*) Accordingly, we may consider the declarations filed by Oswit—particularly given that the HOA did not renew its objections on appeal. (C.f. *Gruber v.*

5

*Gruber* (2020) 48 Cal.App.5th 529, 541, fn. 5 [addressing objections to evidence presented in opposition to an anti-SLAPP motion where the trial court overruled the objections, and the objecting parties renewed the objections on appeal].) That being said, as we explain *post*, the additional information provided in the declarations does not aid Oswit.[5]

B.    *Legal Principles*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson*, *supra*, 7 Cal.5th at pp. 883–884.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

We review an order granting or denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We therefore engage in the same two-step process that the trial court undertakes in assessing

---

[5]    On appeal, Oswit objects to evidence the HOA filed below in support of its opposition to the anti-SLAPP motion. All of this evidence goes to whether the HOA met its burden at the second prong of the analysis. Because we do not reach the second prong, we need not address these objections.

an anti-SLAPP motion. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.) If the defendant fails to meet its burden at the first step, we need not address the second step.

C.    *Analysis of Prong One Under the Anti-SLAPP Statute*

Oswit contends the trial court erred in concluding its protected conduct and speech were not the basis for the HOA's breach of contract, nuisance, nuisance per se, and declaratory relief claims.

A defendant satisfies the first prong of the anti-SLAPP analysis by demonstrating that the allegedly injurious conduct falls within one of four categories of protected activity described in section 425.16, subdivision (e), and that the claim asserted by the plaintiff arises from that conduct. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act

7

underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Park, supra,* 2 Cal.5th at pp. 1062–1063.) In making this determination, the court looks at what actions by the defendant supply the elements of the challenged claim. (*Id.* at p. 1063.)

    1. *Allegations in the Complaint*

In paragraphs 29 through 32 of its complaint, the HOA makes several allegations against all three defendants in the underlying action, including, in pertinent part, that they: (1) failed to maintain the golf course in violation of the lease, thereby creating a "severe safety hazard and health and environmental nuisance"; (2) failed to maintain the bodies of water on the golf course, causing them to become stagnant breeding grounds for mosquitos, moss, algae, and bacteria toxic to humans and wildlife; (3) failed to maintain the facilities; and (4) refused to comply despite numerous written demands.[6]

As to Oswit in particular, the HOA alleges in paragraph 36 that, "[i]n written materials disseminated to [HOA] members, among others, Oswit has

---

[6] These last two allegations appear to apply only to Palms Partners and Saghian, as the "facilities" refer to the Club's meeting room, the racquetball courts, and the tennis courts, to which Palms Partners retained ownership after it sold the golf course property to Oswit. Paragraph 32 alleges that "[d]espite numerous written demands to Defendants they continue to refuse to comply" and paragraph 33 asserts that, "[o]n or around July 18, 2022, the [HOA] *again* notified Palms Partners of various maintenance issues, and dangerous and unhealthy conditions and demanded that those conditions and public nuisances be remedied" (italics added). Although paragraph 32 references all three defendants, the HOA's use of the word "again" in the next paragraph suggests that all of the other demands occurred prior to July 18, 2022, and thus, before Oswit took ownership.

8

confirmed that it will not continue to maintain or operate the Golf Course; instead, it intends to convert the Golf Course to a public nature preserve and botanical garden, all in violation of the Lease." It characterizes Oswit's desire to "redevelop" the golf course as a violation of the lease that threatens irreparable harm to the HOA. In paragraph 37, the complaint references admissions on August 1, 2022, by an attorney for The Prescott Foundation, that " '(i) "Prescott Preserve [the new name proposed for the Mesquite Golf Course] will never be operated as a golf course", (ii) the conversion of the Golf Course violates the existing CC&Rs and Lease rights of the [HOA] and thus "[a]ll HOA communities will need to restate their respective governing documents" . . . "to reflect the new Recreational Use (which may never change)", and (iii) The [] HOA Communities surrounding the Prescott Preserve will be asked to share in these costs and expenses (short and long term) [related to the creation of this preserve.]' " The HOA further asserts that because "Oswit is openly soliciting outside donations to fund this proposed project," it may not have sufficient funds to complete the project. This funding uncertainty, according to the HOA's complaint, "will affect the value and salability of homes in the Mesquite community." Relevant to the claims at issue, the HOA alleges that "[s]ince its purchase of the Golf Course, it appears that Oswit has completely abandoned the Golf Course and has stopped all maintenance, landscaping and irrigation, contributing to its further deterioration." The HOA claims these acts and omissions, together with those of the other defendants, threaten irreparable harm to the health and safety of the HOA residents and threaten to do substantial and permanent damage to the salability and property values of homes within the HOA "by turning the Property into a blighted eyesore and health and environmental nightmare and by discontinuing golf course operations."

9

In the first cause of action, the HOA alleges that "Oswit and Palms Partners have breached and/or anticipatorily breached the Lease and CC&Rs by failing to maintain and operate the Golf Course and the Facilities, including in accordance with the standards set forth in the Lease, and/or announcing an intention not to operate the Golf Course and to convert it to another use."

The second cause of action, which is for nuisance, alleges, among other things, that through the acts and omissions described *ante*, all three defendants "have created conditions and permitted conditions to persist" that are harmful to the HOA residents' health and safety; indecent and offensive to the senses; likely to diminish property values and the ability to sell homes; and an obstruction to the comfortable use and enjoyment of the property. It describes the failure to maintain the golf course, stagnation of bodies of water, and proliferation of bacteria, vectors, and so forth as continuing nuisances that must be abated.

In alleging nuisance per se in the third cause of action, the HOA cites violations of California Health and Safety Code sections 12510 (fire nuisance) and 2002 (water vector related nuisance) as demonstrating that Oswit and the others have created ongoing nuisances per se.[7]

Finally, in its seventh cause of action, the HOA asserts that "[a]n actual controversy has arisen and now exists between the [HOA] and Defendants relating to their rights and obligations under the Lease, the CC&Rs, the Settlement Agreement and the Judgment, in particular as relates to Defendants' obligations to maintain and continue to operate the Golf Course and to maintain the Property, including the Facilities, in good

---

[7] The HOA also cites a code relevant to mold in structures, which again appears relevant only to the Club owned by Palms Partners and Saghian.

and useable condition" and seeks a declaration of the parties' rights, duties, and obligations under the same.

2. *Breach of the CC&Rs and Lease*

We begin with whether Oswit has met its burden on the claim for breach of the CC&Rs and lease to "show 'the challenged cause of action arises from protected activity.' " (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1250.) "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.) A party to a contract may breach by nonperformance, repudiation, or a combination of the two. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 549–550.) Actual breach by nonperformance "refers to an unjustified or unexcused failure to perform a material contractual obligation when performance is due." (*Id.* at p. 550.) Anticipatory breach of contract, on the other hand, " 'occurs when the contract is repudiated by the promisor before the promisor's performance under the contract is due.' " (*Ibid.*)

Oswit argues the HOA's cause of action for anticipatory breach of the CC&Rs and lease is based upon Oswit's public statements regarding its intention to dedicate the golf course property to public use as Prescott Preserve. Oswit further contends the alleged breach is based on Garrison's speech and related public statements, which it claims were matters of widespread public interest in Palm Springs. (See § 425.16, subd. (e)(3) & (4).) Additionally, because her statements occurred at HOA board meetings, Oswit insists they occurred in public forums under the anti-SLAPP statute. (See *id.*, subd. (e)(3).)

11

As an initial matter, nowhere in the complaint does the HOA reference Garrison's statements at HOA meetings. "Because the issues to be determined in an anti-SLAPP motion are framed by the pleadings, we will not 'insert into a pleading claims for relief based on *allegations of activities that plaintiffs simply have not identified . . . .* It is not our role to engage in what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim *that has not in fact been specifically alleged*, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it.' " (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883.) Thus, we will not read in allegations regarding statements made at HOA meetings in order to bring the complaint within the gamut of subdivision (e)(3) of section 425.16. Most of the HOA's complaint focuses on Oswit's *actions*; namely, its alleged failure to maintain and irrigate the golf course and keep the water features clear of algae and vectors such as mosquitoes. Subdivision (e)(3) of section 425.16 applies only to "any written or oral statement" and these are not statements. (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 728 (*Talega*).)

To the extent the HOA addresses speech in paragraphs 36 and 37 of the complaint, it argues these paragraphs provide mere context for, and evidence in support of its claims. At most, these paragraphs could be construed as reflecting either Oswit's decision to repudiate the CC&Rs and lease or its

confirmation that it was, in fact, breaching the same.[8]  But the complaint also makes allegations of actions reflecting breach.  Furthermore, the focus of a cause of action for breach of any agreement is the failure to perform as promised under the contract.  The damages are not based on the breaching party's statements of repudiation or breach but on the losses that result from that party's failure to provide the benefit of the bargain.  Thus, the fact that Oswit made statements about its intended use of the property as a preserve does not mean these statements must themselves form the basis of liability.  As the high court explained in *Park*, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity.  Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.)  As the HOA points out, to hold otherwise would allow a defendant to immunize itself from liability by talking publicly about its wrongful conduct, then filing an anti-SLAPP motion against anyone who sued.  In this case, the language of the complaint indicates the HOA did not sue to stop Oswit from *talking* about converting the golf course into a preserve.  By seeking a judgment that Oswit was acting in violation of the lease and CC&Rs, as well as declaratory and injunctive relief, the HOA sought to stop Oswit from actually *turning* the golf course into Prescott Preserve.

---

[8]     Paragraph 36 references written materials disseminated to HOA members but does not indicate when this occurred.  If it happened before the time when Oswit's performance was due under the CC&Rs and lease, then it may demonstrate a repudiation of the agreements.  If after, it may have confirmed that Oswit had breached the agreements and planned to remain in breach.

Oswit contends the timing of the HOA's lawsuit is what is most fatal in its attempt to avoid anti-SLAPP protection. It highlights that Oswit purchased the property on July 22, 2022, the HOA made the decision to sue on July 28, 2022, and the HOA filed suit on August 12, 2022. Because Oswit submits that it did not and could not destroy or demolish the golf course in the 21 days between the purchase and filing of the lawsuit, much less the six days between the purchase and the decision to sue, it asserts the HOA's claim for anticipatory breach of the CC&Rs and lease was triggered by Oswit's public statements.

In our view, what this timing reflects is that, although Garrison acknowledges having been "quite vocal with the [HOA] Board *for years* as to [Oswit's] plans and proposals to create open space natural conservancy which included the Mesquite Golf Course property" (italics added), the HOA did not sue *until* Oswit actually purchased the property. In other words, the HOA tolerated Garrison's and Oswit's public statements of their intentions for *years* but did not actually sue until Oswit *acted* on its intent and demonstrated that it was going through with its promises to turn the property into a preserve. Once again, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) And, although Oswit may not have had time to take many steps towards converting the property after it took ownership, it immediately made clear its intent to breach the contract and to not pursue golf course restoration. The complaint alleges that destroying the golf course would deprive the homeowners of the intended benefits of the lease and CC&Rs and interfere with their quiet enjoyment of the property. Thus, the

14

cause of action was not based on Oswit's statements themselves.[9]  Rather, this speech was evidence of Oswit's liability for breach of contract and was a first step in Oswit's underlying course of conduct of transforming the golf course into a preserve.  (See *Park, supra,* 2 Cal.5th at p. 1060.)

To the extent Oswit otherwise argues the HOA could not legitimately claim the property could be restored to a usable golf course or that Palms Partners was responsible for its present condition, these are factual issues that go to the HOA's likelihood of success on the merits on prong two.  They are not relevant to the first step of the anti-SLAPP analysis.  (*Talega, supra,* 225 Cal.App.4th at p. 728 [at the first stage of the analysis, we review the parties' pleadings, declarations, and other supporting documents "only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable' "].)  Accordingly, the trial court did not err in denying Oswit's anti-SLAPP motion as to the breach of contract claim.

3. *Nuisance and Nuisance Per Se*

Oswit also claims the HOA's nuisance causes of action are entirely based on Oswit's public statements because Oswit did not cause any of the alleged nuisances as a matter of fact and law.  As an initial matter, it appears Oswit forfeited this contention by not raising it in its anti-SLAPP motion below.  (See *Premier Medical Management Systems, Inc. v. California Ins.*

---

[9]      Although the HOA's subjective intent in filing the lawsuit is not relevant under the anti-SLAPP statute (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78), it is worth noting that Oswit's logic does not follow.  If the HOA's allegations were based on Oswit's public statements and it filed suit to chill Oswit's speech, success in silencing Oswit would not achieve the desired result of preventing Oswit from turning the golf course into a nature preserve.  This further confirms that the purchase of the property and initiation of the conversion, not Oswit's statements about the conversion to a nature preserve, form the basis for Oswit's alleged liability.

*Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [generally the "[f]ailure to raise specific challenges in the trial court forfeits the claim on appeal"].)

In providing guidance regarding "the showings and findings required by section 425.16(b)," our Supreme Court explained that "[a]t the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) The focus is on whether the allegations supply the elements of a cause of action. (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) In other words, Oswit was required to identify the allegations in the complaint that it believed arose from protected activity *and* the claims for relief supported by those allegations. While the anti-SLAPP motion need not seek to strike the entire cause of action, the movant must still identify the relevant causes of action. (See *id.* at pp. 1010–1011.) However, in discussing prong one in its anti-SLAPP motion, Oswit referenced only the first cause of action for breach. It made no mention of how the allegations supplied elements of the nuisance causes of action. Thus, Oswit forfeited its prong one challenge to these claims.

Even if we address its arguments on the merits, Oswit has not overcome its burden of showing the HOA's nuisance claims arose from protected activity. "Anything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any . . . public park, square, street, or highway, is a nuisance." (Civ. Code, § 3479.) "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (*Id.*,

16

§ 3480.)  Every nuisance that is not a public nuisance is a private nuisance. (*Id.*, § 3481.)

" '[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law.' " (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086.)  If the use of a property violates the applicable statute, " ' "no proof is required, beyond the actual fact of their existence, to establish the nuisance." ' " (*City of Dana Point v. New Method Wellness, Inc.* (2019) 39 Cal.App.5th 985, 989.)

Here, Oswit does not make clear how its allegedly protected activity of making written and oral statements about converting the golf course into a preserve supplied the elements of the HOA's nuisance causes of action.  Its only argument is that the time frame of, at most, 21 days between when it purchased the property and when the HOA filed suit presented an insufficient amount of time for it to have *caused* any of the alleged nuisances. It claims it "merely purchased the property for its stated public interest and communicated to the public its intentions to forever protect the property."  As a result, it contends the HOA must be relying on Oswit's public statements to establish that Oswit created the nuisance or permitted nuisance conditions to exist.

The problem with this argument is that what Oswit ultimately challenges is the truth of the HOA's allegations and the HOA's ability to prove Oswit substantially interfered with the HOA's comfortable enjoyment of the property.  But these are not issues to be decided at prong one of the

17

section 425.16 test.[10]  At this stage, we consider only whether the claims alleged in the complaint arise from protected speech or petitioning activity; " '[w]e do not consider the veracity of [the plaintiff's] allegations' [citation] nor do we consider '[m]erits based arguments.' "  (*Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 156.)  Although we need not accept the HOA's allegations as true (*Wilson*, *supra*, 7 Cal.5th at p. 887), neither must we accept Oswit's contrary factual assertion that it did not cause any of the alleged nuisances.  Whether Oswit could have actually caused, or failed to abate, nuisance conditions during the 21 days it owned the property before the HOA filed suit, and whether its' actions could have resulted in conditions that substantially interfered with the HOA's enjoyment of the property (see *Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1176 [a successful private nuisance cause of action requires proof that the defendant interfered with the use and enjoyment of the property and that said interference was substantial]) are factual issues to be decided on the merits at a later date.  Accordingly, we conclude Oswit has not met its burden on prong one of the anti-SLAPP analysis.

       4. *Declaratory Relief*

Oswit contends the HOA's declaratory relief cause of action is derivative of its claims for breach of contract and nuisance and, therefore, must also fail.  However, because we disagree that Oswit has met its burden under the anti-SLAPP framework as to the HOA's first, second, and third causes of action, by its own admission, its assertions as to the seventh cause of action must also be found lacking.  The "actual controversy" the HOA

---

10    And indeed, in its anti-SLAPP motion below, Oswit made these arguments as part of its prong two analysis under the heading "Plaintiff Must Show It Will Probably Prevail on Its Claims."

alleges relates to whether the lease and CC&Rs require Oswit to maintain and operate the golf course.  For the reasons explained above, Oswit may have conveyed its intent to transform the golf course into a nature preserve, but this does not convert the statements themselves into the basis for liability.

## DISPOSITION

The judgment is affirmed.  The HOA is entitled to its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.

19