Filed 8/1/23 Ora v. Hollywood Chamber of Commerce CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SCOTT DOUGLAS ORA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HOLLYWOOD CHAMBER OF COMMERCE,<br><br>    Defendant and Respondent. | B321734<br><br>(Los Angeles County Super. Ct. No. 21STCV23999) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge. Affirmed.

Scott Douglas Ora, in pro. per., for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Reid E. Dammann and Violaine Brunet for Defendant and Respondent.

_____

Plaintiff and appellant Scott Douglas Ora (Ora) appeals from a judgment of dismissal entered after the trial court sustained the demurrer of defendant and respondent Hollywood Chamber of Commerce (the Chamber of Commerce) to Ora's first amended complaint (FAC) without leave to amend.

We affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

### I. The Star Mishap

The Chamber of Commerce administers Hollywood's "Walk of Fame," a network of sidewalks along Hollywood Boulevard and Vine Street embedded with decorative stars honoring notable persons in the entertainment industry. To receive a star, a person must be nominated via written application. Each year, the Chamber of Commerce awards stars to a handful of these applicants.

Once an application is approved, the Chamber of Commerce sends an award notification letter informing the honoree that he must set a date for the dedication ceremony within a certain timeframe and pay a sponsorship fee. If these conditions are not met within a specified timeframe, the award expires and the honoree must resubmit his application.

In 1988, Academy-Award-winning songwriter and lyricist Leo Robin (Robin) was nominated by his wife to receive a posthumous star. The nomination was co-sponsored by veteran actor and performer Bob Hope (Hope).

---

[1] "Because this matter comes to us on demurrer, we take the facts from plaintiff's [FAC], the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action. [Citation]." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

In June 1990, the Chamber of Commerce sent Robin's wife an award notification letter informing her that Robin had been selected to receive a star. At that time, the period for scheduling a ceremony was five years and the sponsorship fee was $4,000.

Unfortunately, Robin's wife passed away before the letter arrived. The unopened letter was returned to the sender and placed in the Chamber of Commerce's files. Per the Chamber of Commerce's practices at the time, no further attempts were made to notify Hope or Robin's surviving relatives. And because no one responded to the letter, Robin's star was never installed.

## II. Ora's Campaign to Reinstate Robin's Star

In 2017, Ora, Robin's grandson and trustee of the Leo Robin Trust, first discovered that Robin had been awarded a star and confirmed that the star was never claimed.

Ora immediately wrote a letter to Ana Martinez (Martinez), then the Vice President of Media Relations for the Chamber of Commerce, "request[ing] that the Walk of Fame Committee reinstate the award to [Robin] of the posthumous star." Ora initially said that he would "not [want] to have too much fanfare in connection with the [dedication] ceremony."

In July 2018, Martinez told Ora that she "d[id]n't know [if] that [reinstatement] will happen as [the star] has to be sponsored and you said you didn't want to have a ceremony or the fanfare that comes with the event which is why we do this."

A few days later, before the Chamber of Commerce had communicated any decision about the potential reinstatement, Ora wrote a second letter informing Martinez that he now wanted to have a star-studded dedication ceremony that he hoped would be "a grand celebration" with an "exceptional turnout." Martinez responded: "From what I gather[,] you are now willing

to have the star dedication happen with a ceremony??  There is the sponsorship fee involved of 40,000.00.  Please let me know when you would like to do the ceremony and once you give me a date we can move forward.  I do have to get it re-instated by the Chair."

Ora sent Martinez a letter selecting a date for the ceremony and enclosed a check for $4,000.  Ora acknowledged that the sponsorship fee had increased tenfold since Robin was awarded a star, but believed that "it would only be logical for the sponsor of [Robin] to pay the same amount" as the other honorees selected in 1990.

Martinez promptly returned Ora's check.  She explained that because "[t]he approval of Mr. Robin's star lapsed many years ago . . . [i]t would need to be reinstated by the Walk of Fame Committee," which would "very likely . . . require that the fee be raised to the current approved level."  Accordingly, the Chamber of Commerce could not accept Ora's check.

When Ora objected to the Chamber of Commerce's position, Martinez told him that "[i]t shouldn't be a problem to reinstate[,] but the fee is $40,000.  Prices have gone up."

In September 2018, Leon Gubler (Gubler), then the President and Chief Executive Officer of the Chamber of Commerce, informed Ora that "[a]s [Martinez] has explained to you, we have existing protocols that must be followed to reinstate star approval."  Per those protocols, Gubler said that Ora's "request[] [for] the fee to be reduced to $4,000 . . . is not possible.  The committee will never approve the reinstatement unless there is a sponsorship in place to pay the fee at the current rate."

4

Ora persisted in his attempts to get the star installed at the 1990 rate for the next three years. Robin's star was never reinstated.

## III. The Lawsuit

Unable to reach an agreement with the Chamber of Commerce, Ora's journey to a star culminated in this lawsuit. On June 29, 2021, he filed his original complaint, suing the Chamber of Commerce for breach of contract and negligence.[2]

Ora alleged that the Chamber of Commerce entered into a contractual agreement to install the star by sending the 1990 award notification letter, and that it violated that agreement by not installing the star despite Ora "d[oing] everything in his power to fulfill performance of the Robin [Star] Contract . . . within two years of [his] discovery of Robin's star" in 2017. He also argued that this breach constituted negligence, and that the Chamber of Commerce compounded this negligence by failing to (1) ensure that Robin's family or Hope were notified of the star award in 1990 and (2) follow through on its promise to consider reinstatement of Robin's star at successive Walk of Fame Committee meetings from 2019 through 2021.

The Chamber of Commerce demurred to Ora's complaint, alleging, inter alia, that the complaint was time-barred, that Ora lacked standing, and that no contract existed between the parties. Ora filed an opposition to the demurrer, and the Chamber of Commerce filed a reply supporting it. On

---

[2] Ora's complaint also (1) improperly attempted to sue several subsidiary entities, including the Hollywood Walk of Fame itself, and (2) contained a third cause of action for injunctive relief, which, as noted by the trial court, was "actually a request for a type of remedy . . . for the alleged breach of contract."

5

February 16, 2022, the trial court granted the demurrer with leave to amend.

On March 17, 2022, Ora filed the FAC. The causes of action in the FAC are substantially similar to those in the original complaint.[3] Again, the Chamber of Commerce demurred, and the parties filed papers opposing and supporting the demurrer.

On May 17, 2022, the trial court sustained the Chamber of Commerce's second demurrer without leave to amend. With respect to Ora's claim for breach of contract, the trial court determined that no contract was entered into, construing the Chamber of Commerce's 1990 award notification letter as an offer which was not timely accepted. Alternatively, the trial court found that, assuming a contract did exist, its conditions precedent—namely the timely scheduling of a star ceremony and payment of a sponsorship fee—were not performed until 13 years after the contractual period of limitations expired. Under either theory, the trial court held that there was no viable claim for breach of contract. The trial court also sustained the demurrer as to Ora's negligence cause of action, which it found to be derivative of his contractual claim.

---

[3] The only substantive amendments in the FAC are the following additions: (1) the allegation that by "plac[ing] the award letter in its files and always ke[eping] it a secret from . . . Hope," the Chamber of Commerce "obstruct[ed]" Hope from "schedul[ing] . . . Robin's ceremony and . . . pa[ying] for Robin's [star]"; (2) the argument that the Chamber of Commerce's acts, including their "obstruction" of Hope's ability to timely fulfill the agreement, violated the implied duty of good faith and fair dealing; and (3) an exhibit containing information about Hope's stars.

6

A judgment of dismissal was entered, and this timely appeal ensued.

## DISCUSSION

### I. Standard of Review

"Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows:  'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed "if any one of the several grounds of demurrer is well taken.  [Citations.]"  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.  [Citation.]'  [Citations.]"  (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.)

### II. Analysis

On appeal, Ora admits that his negligence claims "are dependent on the gravamen breach of contract claim."  Therefore, we need only determine whether the trial court properly sustained the demurrer without leave to amend with respect to Ora's breach of contract claim.  We conclude that it did.

7

To withstand demurrer on a cause of action for breach of contract, a plaintiff must plead, among other things, "the existence of a contract [and] his or her performance of the contract or excuse for nonperformance." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.)  Ora's breach of contract claim fails to clear this threshold.

The parties dispute whether and how a contract was formed between them.[4]  Ora insists that the 1988 nomination application constituted an offer to sponsor Robin's star per the Chamber of Commerce's policies, and that the Chamber of Commerce accepted that offer without qualifications by sending the 1990 award notification letter.  The Chamber of Commerce contends that the award notification letter constituted an offer to award the star, and that since the offer was never accepted, no contract ever formed.  Assuming, arguendo, that Ora's theory of the contract is correct, he still cannot establish performance of the contract's conditions precedent or a viable excuse for nonperformance.[5]

---

[4]      The Chamber of Commerce also disputes whether Ora has standing to enforce any purported agreement between it and the original sponsors of Robin's star.  We agree with Ora that, at minimum, he has standing in his representative capacity to pursue a colorable claim regarding reinstatement of the star. Indeed, in 2020, the Chamber of Commerce publicly admitted that it would need to work with "someone representing [Robin's] estate" to reinstate the star.

[5]      Because we resolve the appeal on these grounds, we need not address the parties' arguments about issues of contract formation or the statute of limitations applicable to breach of contract claims.

As relevant here, "a condition precedent is . . . an act of a party that must be performed . . . before a contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313.) "Generally, a party's failure to perform a condition precedent will preclude an action for breach of contract." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1192.)

In the FAC, Ora states that the terms of the alleged contract required Robin's sponsors to schedule a ceremony within five years from the award of the star and to pay a set sponsorship fee "at time right after selection[.]" Ora alleges that if these conditions are not met, the award expires and "a new application must be submitted." Thus, as alleged, these terms are conditions precedent that must be performed within a contractually specified period to prevent the automatic revocation of the Chamber of Commerce's acceptance.

The award notification letter was sent to the address of Robin's sponsor in June 1990. Under Ora's theory of the contract, the conditions precedent needed to be performed by June 1995 to trigger the Chamber of Commerce's contractual obligations. Yet Ora admits that no one attempted to satisfy these conditions until he mailed the Chamber of Commerce a letter containing a proposed date for the dedication ceremony and a $4,000 check in July 2018, more than 23 years after the contract expired.

9

Critically, the FAC does not plead a legally valid excuse for nonperformance of these conditions during the contractual period.**6**  The FAC alleges that the Chamber of Commerce "unfairly interfere[d] with [Ora's] right . . . to receive the benefits of the contract" by keeping the returned, unopened award notification letter in its files.  But we disagree that the simple act of retaining a letter returned to the offeree by the postal service constitutes "unfair interfere[nce]" with the offeror's contractual rights.

On appeal, Ora argues that the Chamber of Commerce waived performance of the conditions precedent by "continuing to deal with [him] after the dates specified in the contract."  This argument fails both procedurally and substantively.  Procedurally, the FAC did not specifically allege that the Chamber of Commerce waived the performance of these conditions.  (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1388 ["'[E]xcuses must be pleaded specifically.' [Citation.]"].)

---

**6**     The mere failure of an offeror to actually receive a mailed letter communicating acceptance is not a legally valid excuse for nonperformance under California law.  (Civ. Code, § 1583 ["Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer"].)

10

Substantively, the exhibits attached to the FAC demonstrate that the Chamber of Commerce did not waive performance of the conditions precedent.[7] Instead, its representatives consistently stated that Robin's star award had lapsed and would need to be reinstated according to the Walk of Fame Committee's policies, and that Ora would need to pay a sponsorship fee at contemporary rates. Tellingly, the Chamber of Commerce expressly rejected and returned the document with which Ora attempted to perform the lapsed conditions precedent—namely, his letter selecting a date for the ceremony and containing a $4,000 sponsorship fee. This conduct is not consistent with an intent to waive Ora's performance of conditions precedent. (*Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1107 ["""Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations.] The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver."""" [Citations.]"].)

Ora insists that "the silent acquiescence by the [trial] court and the [Chamber of Commerce] on [his] argument regarding the waiver . . . of the conditions precedent" means that his "argument

_____

[7] To the extent that Ora's allegations characterize his correspondence with the Chamber of Commerce in a manner that conflicts with the actual text of that correspondence, we disregard those allegations. While we generally must take all facts alleged in the FAC as true, "[i]f facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)

11

must be granted deference." (Bolding omitted.) He does not support this proposition with citations to authority. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]"].) And the cases Ora does cite to support finding waiver are inapposite. (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339 [describing cases in which a party's "'tacit approval'" of alternate payment plans or express acceptance of untimely payments waived performance]; *Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 78–81 [a party that approves sporadic tolling agreements during a contractual period of limitations may waive the right to enforce the original period of limitations].)

In brief, the demurrer was properly sustained as to Ora's breach of contract claim because the conditions that triggered the Chamber of Commerce's alleged contractual duty were never performed. Moreover, because amendment cannot cure this defect, the demurrer was properly sustained without leave to amend.[8]

---

[8] Ora argues that the trial court abused its discretion by sustaining the demurrer without leave to amend, as he maintains that amendment could have cured the FAC. This contention is not borne out by the minimal alterations he proposes on appeal, which would not have any substantive impact on the fatal defects in the FAC. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [it is the plaintiff's burden to show "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"].)

## DISPOSITION

The judgment of dismissal is affirmed.  The Chamber of Commerce is entitled to costs on appeal.


<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT